DEITSCH et al. v. GEORGE R. GIBSON CO.

(Circuit Court, S. D. New York. August 12, 1907.)

TRADE-MARKS AND TRADE-NAMES—SUIT FOR INFRINGEMENT — PRIORITY OF RIGHT.

A firm commenced the use of a name as a trade-mark for tooth brushes in 1883, and continued such use until its failure about 1890, and during the same time defendant used a similar name for brushes sold by him. On being sued for infringement, he promised to quit, but, the firm soon failing, he did not. After the failure complainant's assignor, who had become a partner shortly before, appropriated the trade-mark as his own, and had the same registered. *Held*, that he was not the legal successor of the firm, and obtained no right from defendant's promise, but his right dated only from the time of his own use, which, being later than defendant's, afforded no ground upon which complainant was entitled to enjoin defendant as an infringer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 36, 41, 42.]

In Equity. On motion for a preliminary injunction.

Joseph L. Levy, for the motion.
Griggs, Baldwin & Pierce, opposed.

HOUGH, District Judge. Undoubtedly the grant of a registered trade-mark to the complainants makes them prima facie owners thereof, which is but one way of saying that the burden is on any one, asserting the right to use the same collocation of words and figures, to prove that right. The greatest right possessed by complainants must be measured by the affidavit of their assignor, Martin, to the effect that the trade-mark had been "continuously used in (my) his business since about the 1st day of April, 1883." In other words, it is of the essence of complainant's contention that they are at least the prima facie owners of a trade-mark appropriated as long ago as 1883 by Martin, and continuously used by him in his business since that date.

In 1883 Martin was 16 years old, and a boy in the employ of the Wallach firm. Whatever his rights, when shortly before its failure he became a partner in the firm, the trade-mark statement signed by him is difficult to reconcile with the now admitted facts. The best way of putting it for complainants is to say that the firm of Wallach devised the trade-mark in 1883; Martin became a partner in that firm in 1889; and by virtue of some assignments or transfers from the other partners came out of the wreck of the Wallach business the owner of the firm's trade-marks. If he did that, he could perhaps use his own trade-mark on the goods of houses he was subsequently connected with, and leave them and their business taking his trade-mark with him. This seems to me the line of reasoning based on cases like Thomson v. Batcheller, 93 Fed. 660, 35 C. C. A. 532. As applied to this case, I do not think title to the trade-mark is successfully gotten out of the Wallach firm and into Martin, or, in other words, the trade-mark as Martin's property (not "Willy Wallach's") is no older than 1890, or some date subsequent to the Wallach failure, and it became Martin's property by the simple process of his continuing to use it after the

failure—when nobody objected to his so doing. But such use cannot make him legally the successor of "Willy Wallach." The failure opened the trade-mark to the public; Martin as one of the public appropriated it; and whatever rights he possesses date from such appropriation. Assignments or disclaimers by other members of the extinct "Willy Wallach" firm are of no avail. When that firm abandoned business, the trade-marks were abandoned, and when Wallach & Blackwell executed the papers now produced and dated in 1902 they owned nothing which could assist Martin in his use of the word "Marguerite." The interference proceeding does not help this present contention. Martin's use of the word from 1890 was enough to defeat Martin & Bowne Company.

It is quite true, as stated in briefs, that I have given unusual opportunity for the production of affidavits on both sides. This was done because the grant of a registered trade-mark in effect puts the burden of proof on a defendant—an inversion of the ordinary proceeding—and therefore I thought considerable care in preparation of defendant's case was required.

Every affidavit submitted suggests the need of cross-examination; but, taking them for what they are worth, I consider it shown affirmatively that "Marguerite" as Martin's trade-mark dates not from 1883, but about 1890.

It is also affirmatively shown that from a date earlier than 1890 Gibson has sold, and been known in the trade to sell, "Margherita" brushes made by Loonen of Paris—the very brush now sought to be enjoined. The action in common pleas in 1890 was probably brought and settled substantially as narrated by Martin. It evidently did not stop Gibson, and, even if he did promise to stop, it is difficult to see why he was not absolved from his promise by the swiftly following failure of "Willy Wallach." The nearest approach to truth I can get from these affidavits is this: For a number of years before 1890 Willy Wallach used "Marguerite" and Gibson "Margherita." Wallach thought more of his word than Gibson did of his, and, when the latter was sued, he promised to quit. Wallach almost immediately failed. Gibson continued "Margherita," Martin took up "Marguerite," and each (personally or through successors) has continued to use his own word ever since, though Martin has had to compromise with Martin & Bowne Company and let them have "Marguerite" until 1908, which is the reason for complainants not having a Marguerite toothbrush in stock when suit began.

Motion for preliminary injunction denied.