LAND, J.
Plaintiff, a manufacturer of a certain pepper sauce, styled “Extract of Tabasco Pepper,” sued the defendant, the manufacturer of the well-known “Tabasco” sauce, for $30,000 damages for libel upon the business and occupation of the plaintiff. Both parties are corporations domiciled in the parish of Iberia, La.
The charge of libel was based on a circular letter issued by the defendant, in form as follows:
*152 “Legal.
“E. M. McIlhenny’s Son v. Infringers.
“New Iberia, La. July 17, 1906.
“Rafferty & Hozier, New York, N. Y.
“Dear Sirs: It has come to our attention that various persons are seeking to secure the benefit of the good will which attaches to the use of the trade-mark ‘Tabasco’ on bottles of pepper sauce.
“This trade-mark was adopted in 1868 by Edmund Mcllhenny to distinguish his mark of pepper sauce from pepper sauce made by other manufacturers. It is registered as trade-mark No. 51035 in the Patent Office of the United States.
“Under this trade-mark a large and profitable business ■ in the manufacture and sale of p'eppen sauce was built up by Edmund Mcllhenny, and that business has grown to such large -proportions under the management of his successors that certain competitors in the manufacture and sale of pepper sauce have been tempted to endeavor to secure some of our trade by the use of our trade-mark. It is our purpose to proceed against any person who in the future may offer for sale, under the trade-mark ‘Tabasco,’ pepper sauce not made by us.
“We do not know whether, not being conversant with the foregoing facts, you have in the past offered for sale any pepper sauce other than ours under the foregoing trade-mark, or whether you are doing so at present; but, if such be the case, we request that you cease such infringement.
“In view of the pleasant business relations which have existed between us in the past, we are especially averse to causing any unreasonable hardship by the enforcement of our rights; therefore, we beg to inform you that, if you have on hand any goods other than ours bearing the trade-mark ‘Tabasco,’ you may have until August 15, 1906, to observe our wishes expressed herein.
“We will institute legal proceedings against any such dealers as may after August 15, 1906, offer for sale under the name ‘Tabasco’ pepper sduee manufactured by any person, firm or corporation other than E. Mcllhenny’s Son.
“Yours very truly
“[Signed] E. Mcllhenny’s Son.”
Plaintiff alleged that 30,000 of these circulars were distributed by defendant through the mails among dealers in pepper sauce throughout the United States, Canada, and foreign countries, and that many persons who received the circulars thus sent had bought or used the pepper sauce manufactured by the plaintiff.
Plaintiff further alleged that defendant also addressed letters to dealers in pepper sauce, and that the substance of said circulars and letters was the false and illegal claim that defendant was by law exclusively vested with the right to use the word “Tabasco” as a designation of its product, and threatening with suits for infringement all persons who might buy, sell, or use the product manufactured by the plaintiff, and that the object and purpose of all such writings and publications was to frighten dealers and users of plaintiff’s product from buying, selling, or using it, and to secure to defendant an unlawful monopoly in the use of the name “Tabasco.”
Plaintiff further alleged that the defendant had no trade-mark that entitled it to the use of the name “Tabasco,” but, on the contrary, its patent right for “Tabasco pepper sauce” expired in the year 1887, and its subsequent illegal registration of “Tabasco” as a trade-mark had been canceled.
Plaintiff further alleged that the illegal and wrongful acts of the defendant in the premises have damaged plaintiff in its trade in the sum of $10,000, in additional expenditures of labor and money to maintain its business standing in the sum of $3,000, in expenses incurred to procure the cancellation of the registration of the said illegal trademark in the sum of $2,317.83, and in punitive damages in the sum of $16,000.
The defendant appeared, and for answer denied all and singular the allegations in the petition contained. This answer was filed in August, 1907. In May, 1910, the defendants filed a supplemental and amended answer, in which they admitted the distribution of the circular letters as alleged in the petition, but averred that said circular was prepared and mailed under the advice of competent counsel, that every statement and allegation therein contained was true, and that defendant corporation at the time said circular was mailed was entitled to the exclusive use of the word “Tabasco” as a *154 trade-mark in connection with the manufacture and sale of pepper sauce, and that its successor in title, the Mcllhenny Company, of the state of Maine, is entitled to the use of the same trade-mark.
The answer further averred that since January, 1902, the plaintiff has continually infringed the trade-mark of the defendant. The case was tried, and judgment was rendered in favor of the defendant. The plaintiff has appealed.
Edmund Mcllhenny in the year 1868 began to make a pepper sauce, which he called “Tabasco,” and in 1870 patented a process known In the market as “Tabasco sauce.” The family continued the manufacture of the same sauce, always using the name of “Tabasco” to indicate the product. They merged into the defendant corporation, which continued to manufacture the same sauce under the same name. The patent expired in 1887. Between the years 1890 and 1900 other persons commenced the manufacture and sale of pepper sauce, called “Tabasco.” Among these were C. P. Moss of New Iberia and Christian Shertz of New Orleans, who in 1901 formed a partnership for the manufacture of Tabasco sauce in the town of New Iberia. In 1902 Moss purchased Shertz’s interest in the partnership, and in 1902 organized the plaintiff corporation, which continued the business.
It appears that Shertz in July, 1901, deposited in the United States Patent Office for registration a label bearing the title “Tabasco Pepper (for Extract of Tabasco Pepper),” and that in January, 1902, Shertz transferred to C. P. Moss all his right, title, and interest in said reregistered label, and that Moss, in turn, transferred the label and business to the plaintiff corporation.
In 1905 the defendants applied to the United States Patent Office for registration of the name “Tabasco” as their trade-mark. This application was allowed, but was subsequently canceled on the ground that the name “Tabasco” was geographical, and merely descriptive.
In April, 1906, the defendants succeeded in registering the name “Tabasco” as their trade-mark under the act of Congress approved February 20, 1905 (Act Feb. 20, 1905, c. 592, 33 Stat. 728 [U. S. Comp. St. Supp. 1911, p. 1466]). This registration was based on an affidavit of ownership and actual and exclusive use of the trade-mark for 10 years preceding the date of the passage of the act. In July, 1906, the defendants issued and distributed the circular letters as stated 'supra.
In December, 1906, the plaintiff company registered in the United States Patent Office its trade-mark for “Extract of Tabasco Pepper and Catsup.”
The present suit was filed on June 25, 1907. In 1908 the plaintiff company filed an application to cancel the defendants’ registration of date April 3, 1906, on the grounds that the word “Tabasco” was not a technical trade-mark, and was not in the exclusive use of the defendants for 10 years prior to February 20, 1905.
[2] In March, 1909, plaintiff’s application to cancel was sustained by the examiner of interference, and the decision was affirmed by the Commissioner of Patents in June, 1909. The defendants appealed to the Court of Appeals of the District of Columbia, which on February 1, 1910, handed down a decree affirming the decision of the Commissioner.
We make the following extracts from the opinion of said court, to wit:
“Two questions are here involved: First as to whether appellant’s mark may properly be denominated as a technical trade-mark, and, if not, whether the Trade-Mark Act of February, 1905, clothes the Commissioner with authority to cancel a mark registered under the so-called ten years’ clause of that act.
“Appellant’s application was sufficient in form under either the provisions of the statute applying to technical trade-marks or under said 10 years clause. Therefore, if it be found that registration can be sustained only under the .10 years clause, it will be presumed that registration was under that clause. If, on the other hand, the registration can be sustained, under *156 either of the above provisions, there is no reason, in the absence of an express finding of the Commissioner, why registration should not be treated as that of a technical mark.
“We will first inquire, therefore, whether ‘Tabasco,’ as here used is the subject of a technical trade-mark. Tabasco is a state in the republic of Mexico, and was when appellant adopted the name as a trade-mark. Indeed, the record shows that the word was adopted by the predecessor of appellant because the seed of the pepper from which the sauce was made originally came from that state. In the application for a patent for the purpose of preparing this sauce filed by appellant’s predecessor, and upon which the patent was granted September 27, 1876, it is stated:
“ ‘This invention relates to a new process of preparing an aromatic and strong sauce from the pepper known in the market as Tabasco pepper. This pepper is as strong as Cayenne pepper, but of finer flavor.’
“It is worthy of notice that no application for the registration of this mark was made until after the term of the monopoly granted by said patent had expired. See J. A. Sciven Company v. W. H. Towles Manufacturing Company, 32 App. D. C. 321.
“Section 5 of said Trade-Mark Act prohibits the registration of any mark ‘merely a geographical name or term.’ This provision is simply declaratory of the common law, and it is well settled ‘that no one can apply the name of a district or country to a well-known article of commerce, and obtain thereby such an exclusive right to the application as to prevent others inhabiting the district, or dealing in similar articles coming from the district, from truthfully using the same designation. Canal Co. v. Clark, 13 Wall. 321 [20 L. Ed. 581].’ In Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144, it was held that a person cannot acquire the right to the exclusive use of the word ‘Columbia’ as a trade-mark. The court said: ‘The wox'd “Columbia,” is not the subject of exclusive expropriation under the general rule that the word or words, in common use as designating locality, or section of the country, cannot be appropriated by any one as his exclusive trade-mark.’ This case was cited with approval in Elgin National Watch Company v. Illinois Watch Company, 179 U. S. 673 [21 Sup. Ct. 273, 45 L. Ed. 365] where the court, speaking through Mr. Chief Justice Fuller, said: ‘No sign or form of words can be appropriated as a valid trade-mark, which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right for the same purpose.’
“It appears that the Tabasco pepper is distinctly different from other peppers on account of its peculiar aroma. Manifestly, therefore, no person or firm should be given the exclusive right to designate pepper sauce, the principal ingredient of which is. of course, peppers, as ‘Tabasco.’ We think ‘Tabasco’ a geographical name, and hence not entitled to exclusive appropriation by appellant in vending pepper sauce.
“It is not denied that appellant was not the-exclusive user of said mark during the period required to justify registration under said 10 years clause.”
The court held that the Commissioner had authority to cancel the registration.
This decision clearly holds that “Tabasco” is a name that cannot be exclusively appropriated by any one as a trade-mark at the-common law, or under the general trademark law of the United States, and that defendants did not have exclusive use of the name as required by the act of 1905 to-entitle them to appropriate it as a trademark.
But it is argued in behalf of the defendants that in the year 1906, when they issued the circular letters, the name “Tabasco” was-their duly registered trade-mark, that such registration was prima facie evidence of ownership, and gave them the right to sue-all infringers for damages, under section 16-of the act approved February 20, 1905.
On the other hand, it is argued in behalf of the plaintiff that the same act provides as follows:
“Sec. 25. That any person who shall procure registration of a trade-mark, or entry thereof, in the office of the Commissioner of Patents-by a false or fraudulent declaration or representation^ oral or written or by any false means, shall be liable to pay any damages sustained in consequence thereof to the injured party, to-be recovered by an action on the case”
—and that the registration in question was-procured by a false statement in the declaration that the use of said trade-mark by the defendants and their predecessors in title had been exclusive since 1868. The declaration as to the exclusive use of the trademark was not true, as shown beyond dispute by the evidence adduced on the trial of' the case. The fact that the plaintiff and other dealers were using the word “Tabasco” as a part of their trade-marks was well known to the defendants, and was the rea *158 son why they applied for the registration of their trade-mark. The claim of exclusive use was abandoned before the Commissioner of Patents and the Court of Appeals, D. C.
[1 ] As a matter of law, the exclusive right, if any, of the defendants to use the name “Tabasco,” expired with their patent in the year 1S87. See Singer Mfg. Co. v. June M. F. G. Co., 163 U. S. 169, 186, 16 Sup. Ct. 1002, 1008 (41 L. Ed. 118). The court in that case said:
“The public having the right .on the expiration of the patent to make the patented article and to use its generic name, to restrict this use, either by preventing its being placed upon the articles when manufactured, or by using it in advertisements or circulars, would be to admit the right and at the same time destroy it. It follows, then, that the right to use the name in every form passes to the public with the dedication resulting from the expiration of the patent.”
But the expiration of the patent does not destroy the good will which belonged to the original maker, and one who uses the generic name may be compelled to indicate that the articles manufactured by him are made by him, and not the proprietors of the extinct patent. Id. See, also, Holzapfel’s Co. v. Rahtjens Co., 183 U. S. 12, 22 Sup. Ct. 6, 46 L. Ed. 49; Saxlehner v. Eisner et al., 179 U. S. 35, 21 Sup. Ct. 7, 45 L. Ed. 60; Whann v. Whann, 116 La. 690, 41 South. 38. In the case of Mrs. Mary E. McIlhenny et al. v. Feith & Boehme, in United States Circuit Court, Southern District of Texas, in the year 1898, a consent decree was entered up in favor of the defendants, rejecting the demand of the plaintiffs for an injunction prohibiting and restraining the use of the name “Tabasco” on pepper sauce labels; but perpetuating the injunction against the use of imitations of the bottles, caps, labels, and cartons used by the complainants.
[3] The special defense in this case is that the declaration in question was- made in good faith and on the advice of counsel. A patent lawyer of New York City was consulted by defendants, and on September 29, 1905, wrote to one of the defendants as follows:
“I enclose herewith, four declarations which meet the Commissioner’s objections. One of them, No. 8778, I have drawn in two forms. I should prefer that you should verify the one lettered ‘A,’ because if any admission be made that the use had not been exclusive the Commissioner may desire to call in the parties who-have used the same to hear if they have any objections to your obtaining the trade-mark ‘A,’ because, in the legal sense, your use of the name ‘Tabasco’ has been exclusive though in the literal sense it has not been so because of the temporary use of that name by other persons. If you feel that you cannot verify the declaration, ‘A,’ please verify and return the declaration marked ‘B,’ and also return the three other declarations, duly verified.”
The declaration marked “A” was executed and filed in the Patent Office. In declaration “B” which could not be found, allusion was made to the fact that various persons had at one time or another and for varying periods temporarily used the word “Tabasco” as a trade-mark, but who had discontinued the use because of threats of suit or other reasons. Counsel knew that the plaintiff in this suit had been and was selling a pepper sauce under the name of the “Extract of Tabasco Pepper Sauce,” but was of opinion that such use was not a use of the word “Tabasco” as a trade-mark within the strict and limited meaning of the federal statutes and Patent Office regulations. Counsel, as early as 1901, had advised the defendants that they were entitled, under the common law, to the exclusive use of the word “Tabasco” as a trademark, and that the registration thereof would add nothing to their common-law rights. Counsel advised the defendants that the use by the plaintiff of the word “Tabasco” especially in connection with the word “New Iberia” and the distinctive shape of bottle was intended to deceive, and was calculated to deceive customers into buying its sauce, when they intended to buy the sauce made by the defendants. Counsel advised the defendants to issue the circular letters and to *160 proceed against all dealers who used “Tabasco” as a trade-mark.
The “actual and exclusive use” of the word “Tabasco” was a matter of fact, which the affiant was called upon to verify. Declaration “B” disclosed the fact of the use of the word “Tabasco” by other persons. Declaration “A” affirmed “actual and exclusive use” by defendants since the year 1868. The affiant had his choice between the two declarations, and elected to verify the one which affirmed “actual and exclusive use” in the defendants since 1868. Such use was a matter of fact, and on its verification the defendants obtained the registration of their trade-mark. If the real facts had been disclosed, the application for registration would have been rejected. No amount of legal advice will excuse a suppression, or misrepresentation, of the facts of a case. The client is responsible for the truth of facts by him verified, and advice of counsel will not shield him from statements that are not true.
[4] Having procured the registration of their trade-mark on affidavit of “actual and exclusive use,” the defendants forthwith proceeded to inaugurate a campaign by circular letters against their “competitors” by threatening suits for damages against any person who in the future may offer for sale, under the trade-mark “Tabasco,” pepper sauce not made by them. These circular letters were supplemented by personal letters to a number of dealers. Some 40 or 50 of the customers of the plaintiff received defendants’ circular letters, and a number of them ceased dealing with plaintiff for fear of damage suits. Plaintiff was compelled to take active steps to protect his trade by writing to and visiting customers, assuring them of protection, and employing counsel to defend suits against them. Plaintiff employed counsel in New York City and in the city of New Orleans, and incurred costs and expenses to an amount exceeding $2,000 in the prosecution of the proceeding in Washington, D. C., to cancel the registration of defendants’ trade-mark. The business of the plaintiff throughout the United States was substantially damaged by the pretensions and threats of the defendants in the premises. In the nature of things the amount of damages cannot be proved with certainty. But substantial damage will be presumed in case of the slander or libel of the business of persons engaged in trade, and it is for the court or jury to assess the amount which should be reasonable, considering the facts and circumstances of the case. See Spearing v. Bank, 129 La. 607, 56 South. 548.
[5J This is not a suit for damages, under the Act of 1905, for procuring the registration of a trade-mark by a false declaration. Hence we do not think that damages are recoverable herein for attorney fees and expenses incurred in the proceeding to cancel the registration of defendants’ trade-mark. The manner in which that registration was procured may be considered in determining the question of good faith of the defendants.
Our conclusions are that defendants had no exclusive right to the use of the word “Tabasco” as a trade-mark; that the term “Tabasco” became public property in 1887 on the expiration of the patent issued in 1870; that the registration of 1906 was procured by a misrepresentation of the facts of the case; that defendants acted in bad faith with intent to drive the plaintiff and other competitors from the market; and that the plaintiff has not infringed on the good-will rights of the defendants.
The evidence shows that the business of the plaintiff has steadily increased in volume since 1906. This fact, however, does not show that no damage was sustained by the plaintiff by reason of the libel of its business.
*162 Under the circumstances of the ease, we are of opinion that an award of $5,000 as damages would be reasonable.
It is therefore ordered that the judgment below be reversed, and it is now ordered that the plaintiff do have and recover of the defendants in solido the sum of $5,000, with legal interest thereon from the date of this decree and costs in both courts.
BREAUX, C. J.
I am of the opinion that the amount allowed is excessive, and for that reason I am unable to sign the decree.