McILHENNY CO. v. GAIDRY.

GAIDRY v. McILHENNY CO.

(Circuit Court of Appeals, Fifth Circuit. July 29, 1918. Rehearing Denied October 7, 1918.)

No. 3157.

1. TRADE-MARKS AND TRADE-NAMES ☜96—PRIOR DECISIONS—PERSONS CONCLUDED—MUTUALITY OF ESTOPPEL.

Judgments that defendant had no exclusive right to use the word "Tabasco" in connection with a pepper sauce were not conclusive against it in favor of plaintiff, who was not a party to the suits, nor in privity with either party thereto, and so not concluded thereby.

2. COURTS ☜96(1), 372(1)—PRECEDENTS—FEDERAL AND STATE COURTS.

As precedents, judgments, one by a federal District Court, and the other by a state Supreme Court, that defendant had no exclusive right to use the word "Tabasco" in connection with pepper sauce, are not controlling in the federal Circuit Court of Appeals.

3. TRADE-MARKS AND TRADE-NAMES ☜11—EXPIRATION OF PATENT—RIGHT TO USE NAME.

Ruling that, on expiration of patent, public may with patented article use name by which it was known, furnishes no support for proposition that on expiration of patent for process for making pepper sauce, and for sauce so made, public may, with a pepper sauce other than that patented, use the name which the patentee, abandoning the patented process, and otherwise making a sauce, gave to his product.

4. TRADE-MARKS AND TRADE-NAMES ☜45½, New, vol. 6A Key-No. Series—REGISTRATION—EFFECT OF CANCELLATION.

A trade-mark, with its exclusive rights, if existing, existing independently of registration under Trade-Mark Act Feb. 20, 1905 (Comp. St. 1916, § 9485 et seq.), cancellation of registration does not extinguish a right which registration did not confer.

5. JUDGMENT ☜675(2)—PRIOR DECISIONS—PERSONS CONCLUDED—FURNISHING PLEADING.

A person named as a defendant, but not served, and who did not appear in person or by attorney, is not bound by decree of exclusive right in complainant, merely because an attorney employed by him prepared and furnished an answer, which was filed by the attorney of the defendant served.

6. TRADE-MARKS AND TRADE-NAMES ☜9—GEOGRAPHICAL NAMES.

Though, at the time of the first manufacture of a pepper sauce under the name "Tabasco," the word was the name of a state of Mexico, the maker was not precluded from acquiring a trade-mark therein, his manufactory being in Louisiana, where he raised the peppers, they not having that name before he used them; and there being no evidence that the first peppers obtained and planted by him came from a locality having that name.

7. LIBEL AND SLANDER ☜131—SLANDER OF TITLE—MISTAKEN BELIEF.

One who, believing he has an exclusive right to use a word as a designation of his goods, in good faith warns dealers against invasion of his supposed right, though mistaken as to validity of his claim, is not liable for resulting interference with the products of another.

In Error and Cross-Error to the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Action by Lowell R. Gaidry against the McIlhenny Company. Judg-

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment for plaintiff, and each party brings error. Reversed, and rendered for defendant.

Philip H. Mentz, Louis H. Burns, and John C. Hollingsworth, all of New Orleans, La., for plaintiff.

Chas. Payne Fenner, of New Orleans, La., and Jos. Clark, of Philadelphia, Pa. (Edward S. Rogers, of Chicago, Ill., on the brief), for defendant.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. This was an action by Lowell R. Gaidry, a citizen of Louisiana and a manufacturer of a sauce called "Tabasco Pepper Sauce," against McIlhenny Company, a corporation organized under the laws of the state of Maine, to recover damages for alleged wrongful conduct of the defendant in interfering with the plaintiff's business, by falsely and in bad faith representing, by papers, circulars, and letters, to dealers throughout the country, including those who have handled the plaintiff's product, that the defendant has an exclusive trade-mark right in the name "Tabasco," and threatening legal proceedings, including injunctions, and demands for accounting for profits, against those who handle any sauce called "Tabasco" unless made by the defendant. The parties will be referred to as they were designated in the trial court. A jury was waived, and the court made special findings of fact, upon which was predicated its judgment in favor of the plaintiff, assessing damages at the sum of $1,000. Each of the parties sued out a writ of error to obtain a review of that judgment.

The plaintiff claims that he has the right to use the word "Tabasco" in the name of the sauce he produces and puts on the market, and that the defendant falsely and in bad faith pretends to believe that it has the exclusive right to use that word as the name of a sauce, and holds itself out to the trade as the owner of a trade-mark in that word as a name for a pepper sauce; the defendant well knowing that its claim that it has an exclusive right to use the name "Tabasco" as applied to a sauce is false and fraudulent, such claim being made solely to injure its competitors in business, and particularly the plaintiff. The claim of the defendant is that it has the exclusive right to use the word "Tabasco" in connection with pepper sauce, and that the plaintiff is not legally justified in complaining of the conduct of the defendant in asserting that right, claimed in good faith, and in undertaking to maintain it.

The plaintiff contends that certain incidents in the history of the defendant and of its predecessors in the sauce-making business have the effect of conclusively establishing the falsity of the defendant's claim that it has an exclusive right to the use of the name "Tabasco" in connection with a sauce, and of showing that the defendant's continued assertion of that claim is fraudulent and in bad faith, and is made solely for the wrongful purpose of injuring its competitors in business, including the plaintiff. The defendant, on the other hand, sets up the claim that the plaintiff was so connected with a suit brought by the defendant in the District Court of the United States for the

Southern District of New York as to be bound and concluded by the decree rendered in that suit, which adjudged that the defendant in this suit has the exclusive right to use the word "Tabasco" in connection with pepper sauce, though the plaintiff was not served with process in that suit and did not formally appear therein.

The incidents relied upon by the plaintiff to sustain its last-mentioned contention are: (1) The judgments rendered in certain suits between the defendant and third parties, with whom the plaintiff is not in privity, in which suits the defendant unsuccessfully asserted the claim that it had the exclusive right to use the word "Tabasco" in connection with pepper sauce; (2) the expiration of a United States patent, issued in 1870 to Edmund McIlhenny, through whom the defendant claims, for a method or process of making or compounding a sauce; and (3) the cancellation of a registration in the United States Patent Office, on the application of the defendant's predecessor, of the name "Tabasco" as a trade-mark.

[1, 2] As the plaintiff was not a party to either of the suits in which judgments adverse to the claim of the defendant were rendered, and was not in privity with either of the parties in whose favor such judgments were rendered, he was not bound thereby. To hold that those judgments were conclusive against the defendant in favor of the plaintiff, who was unaffected thereby, would be giving to them the effect of creating an estoppel which is not mutual. After the rendition of those judgments the successful parties thereto relinquished in favor of the defendant all rights conferred thereby upon the former. Such relinquishments conferred no right upon the defendant as against the plaintiff, who was a stranger to such judgments, for the same reason that the judgments themselves conferred no right upon the plaintiff as against the defendant. The rendition of those judgments did not have the effect of creating a legal obstacle to the assertion by the defendant against the plaintiff of the former's claim that it has the exclusive right to use the name "Tabasco" in connection with a pepper sauce. As precedents those judgments—one of which was rendered by the District Court of the United States for the Southern District of Texas and the other by the Supreme Court of Louisiana—are not controlling in this court.

[3] As above stated, the patent issued in 1870 to a predecessor of the defendant was for a method or process of making or compounding a pepper sauce. The following were the claims of the patent:

"1. The pepper sauce prepared of the ingredients herein set forth, substantially in the manner specified.

"2. The herein described process of preparing pepper sauce from the ingredients, in about the proportions set forth."

The following was a finding of the court:

"The process thus patented was abandoned by Edmund McIlhenny shortly after the patent was issued, and has not been used since by him, or his successors in title, and is not used by the plaintiff."

What was patented was the described process of preparing pepper sauce and the pepper sauce prepared in accordance with the patent-

ed process. There was no finding to the effect that during the life of the patent the word "Tabasco" came to be the identifying name of the thing patented, distinguishing it from other things, and the evidence was not such as to justify such a finding. On the contrary, the evidence without conflict showed that from the time of the abandonment by the patentee of the patented process the word "Tabasco" was continuously used by the patentee in the name of a sauce not made by the patented process. There was no finding that the patented process was used by any one after it was abandoned by the patentee, shortly after the patent was issued, and there was an absence of evidence to prove that after such abandonment the word "Tabasco" was in actual use to describe either the patented process or the sauce made according to that process.

The ruling in the case of Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, was to the effect that on the expiration of a patent the public has the right to make the patented article and to use the identifying name of it which, with the consent or acquiescence of the patentee, it came to be known by while the patent was in force and had at the time of the expiration of the patent. That ruling furnishes no support for the proposition that the expiration of a patent gives the public the right to use in the name of a thing other than the patented one a word which, during the life of the patent, came to be the identifying name of a product of the patentee which never had, and for which he never claimed, the protection of the patent. If Edmund McIlhenny, prior to the expiration of the patent to him, had acquired the exclusive right to use the word "Tabasco" with reference to a sauce not made by the patented process, that right was not extinguished by the expiration of the patent, as the patent had nothing to do with the acquisition of it. The expiration of the patent did not have the effect of conferring on the public, or the plaintiff as a part of it, any right with reference to the name of a thing which was not a subject of the patent. From the fact that the defendant has no exclusive right to use the patented process, it does not follow that it has not the exclusive right, the assertion of which by it is complained of by the plaintiff.

[4] The cancellation, on the opposition of a competitor, of the registration by the defendant's predecessor of the word Tabasco as a trademark under the federal Trade-Mark Act of February 20, 1905 (33 Stat. 724, c. 592 [9 U. S. Comp. Stat. Ann. 1916, § 9485 et seq.]), does not stand in the way of the assertion by the defendant that it has the exclusive right which it claims in this suit. That act, which made provision for the registration of trade-marks "used in commerce with foreign nations, or among the several states, or with Indian tribes," and which conferred certain benefits upon registrants thereunder, did not purport to make registration under it the prerequisite to the acquisition or continued existence of an exclusive right to use a word or symbol as a trade-mark. If the defendant's predecessor had the exclusive right which the defendant asserts in this suit, that right was not extinguished by the cancellation of the registration mentioned. If the trade-mark exists, it exists independently of the reg-

istration. The cancellation of a registration does not extinguish a right which the registration did not confer. Edison v. Thomas A. Edison, Jr., Chemical Co. (C. C.) 128 Fed. 1013; Capewell Horse Nail Co. v. Mooney, 172 Fed. 826, 97 C. C. A. 248. Neither of the incidents relied upon by the plaintiff is inconsistent with the assertion in good faith by the defendant that it has the exclusive right to use the word "Tabasco" in connection with pepper sauce.

[5] By a plea or exception the defendant set up as an adjudication binding on the plaintiff a decree rendered by the District Court of the United States for the Southern District of New York, enjoining Edward L. White "from using or offering to customers or otherwise dealing in or with a pepper sauce labeled 'Tabasco Pepper Sauce' manufactured by the defendant Lowell R. Gaidry, or any other pepper sauce in the name of which or in connection with which the word 'Tabasco' is used, excepting only the pepper sauce manufactured by the complainant." The defendant in the pending suit was the plaintiff in the suit in which the decree mentioned was rendered, and its bill of complaint in that suit named as defendants Edward L. White and Lowell R. Gaidry, the plaintiff in the pending suit; but the latter was not served with process in that suit and did not in person or by attorney appear therein. White was represented in that case by Theodore F. Kuper, a New York lawyer. Mr. Kuper was not employed by Gaidry, or authorized to act for him; but Gaidry did employ other attorneys in New York, who prepared an answer for White, which the latter's attorney filed in the suit. There were some negotiations looking to Gaidry paying Mr. Kuper a fee for making a defense for White in the suit, and also to arranging for Gaidry's attorneys appearing in the suit for White and defending it in his name; but these negotiations did not result either in Gaidry paying a fee to White's attorneys or in Gaidry's attorneys appearing in the case for either White or Gaidry. The decree rendered was the result of an agreement entered into between the attorney for the plaintiff in the case and White's attorney, after it had become apparent that Gaidry would not pay a fee to White's attorney and that his own attorneys would not appear in the case or participate in the conduct of it in court.

The preparation by Gaidry's attorneys of an answer for White, which was filed by the latter's attorney, and the negotiations with the result, or lack of result, above indicated, were not enough to make the decree rendered in the case binding upon the plaintiff in the pending case. One having an interest in defeating the relief sought in a suit may, by openly taking charge of and conducting the defense therein, become bound by the result of the suit, though he was not a party thereto on the record. But one who was not a party on the record, and who did not, in person or by an authorized representative, either appear in the case or participate in the control or conduct of it in court, is not bound by the result of it in consequence of an attorney employed by him preparing a pleading in the case and furnishing it to the attorney for a party on the record. Such defense as was made in the case in which the decree mentioned was rendered

was not conducted or participated in by Gaidry, or by any one appearing in court who was authorized to represent or act for him. Neither he nor his authorized representative openly took charge of the defense or participated in the conduct of it in court. He never became a party to the suit, either nominally or by participating in person or by attorney in the conduct of it in court. He had no such connection with the case as would have the effect of making him bound by the decree rendered in it. Bigelow v. Old Dominion Copper Co., 225 U. S. 111, 32 Sup. Ct. 641, 56 L. Ed. 1009, Ann. Cas. 1913E, 875; Rumford Chemical Works v. Hygienic Chemical Co., 215 U. S. 156, 30 Sup. Ct. 45, 54 L. Ed. 137; Hauke v. Cooper, 108 Fed. 922, 48 C. C. A. 144. The exception of res judicata was properly overruled. We do not think that it was made to appear that anything had happened that is entitled to be given the effect of estopping or precluding the parties, or either of them, in favor of his or its adversary, from making the opposing claims respectively relied on.

[6] There was uncontroverted evidence to the following effect:

Several years prior to 1868 a man who at the time had recently come from Mexico gave to Edmund McIlhenny some peppers having a peculiar and agreeable flavor and aroma, all or a part of which were planted by Mr. McIlhenny on his place on Avery Island, near New Iberia, La., and thereafter he continued to grow them there; he being the first person to grow those peppers in the United States. In 1868 he began the manufacture and sale of a table sauce made from that pepper, marketing it in a distinctive bottle bearing a distinctive label, conspicuous words on which were "Tabasco * * Pepper Sauce"; the word "Tabasco" being separated from the other two words by stars. The business so started was continuously conducted by its founder until his death in 1890, and thereafter by a firm composed of his widow and children, until the defendant corporation, controlled by the same family, was formed and succeeded to the business, which it still carries on. There was no name by which the kind of pepper mentioned was known when Mr. McIlhenny began to grow it, or when he started the manufacture and sale of the sauce made from it. Afterwards it came to be known as "Tabasco pepper," though it was and is also called "bird pepper." In the application made by Mr. McIlhenny in 1870 for the patent issued to him in that year it was referred to as "the pepper known in the market as Tabasco pepper." In 1887 it was listed as Tabasco pepper in the catalogue of a New Orleans seed dealer. In 1888 it was described by a botanist of Geneva, N. Y., as a new variety, and he named it "Tabasco pepper." This was the first time it was recognized botanically and under that name.

Edmund McIlhenny and the immediate successors to his business were the exclusive manufacturers of a sauce for the market made from that pepper, and in the name of which the word "Tabasco" was used, from 1868 until 1896. In the latter year a rival in Texas commenced the manufacture and sale of a sauce labeled "Tabasco Pepper Sauce." Thereafter others in different parts of the country did likewise. The defendant and its immediate predecessor, acting on the advice of reputable counsel who were fully apprised of the facts,

continuously and actively, by suits and otherwise, asserted the exclusive right to use the word "Tabasco" in connection with a pepper sauce. Some of its competitors desisted when informed of the defendant's claim and of the facts relied on to support it. Others, including the plaintiff, who first put his sauce on the market in 1911, persisted, denying the validity of the defendant's claim of exclusive right. The word "Tabasco" became so identified with the sauce made and sold by Edmund McIlhenny and his successors that, after as well as before other similar sauces were offered for sale by others, orders for Tabasco given to dealers in sauces were generally understood by both buyer and seller to call for the McIlhenny product, unless another make was specified, and in places where food is served—hotels, restaurants, or private residences—one desiring the hot sauce identified by the McIlhenny bottle and label usually could make the fact known by asking for "Tabasco" or "Tabasco sauce," without otherwise indicating what was wanted. It is quite obvious that hot pepper sauces, other than the defendant's, which are successfully marketed under the name "Tabasco," share in the benefits of the good will in part at least acquired by the defendant's product before there was any competition in the business.

The court made findings of fact which, with an exception to be stated, were such as the above stated evidence called for. Among the findings was the following:

"The defendant and its predecessors in title in good faith have claimed a common-law trade-mark in the word 'Tabasco,' and until the year 1896 had the exclusive use of the trade-mark, but since that time other manufacturers of pepper sauce have used the word 'Tabasco' in connection with their manufactured product. That the word 'Tabasco,' as applied to pepper sauce, is generic, and indicates quality, ingredients, and place of origin of the pepper from which it is made."

The court overruled motions made by the defendant that the concluding sentence of the above-quoted finding be canceled and eliminated, and that the following be incorporated among the court's findings of fact:

"That the word 'Tabasco,' as applied to pepper sauce, indicates origin of manufacture; that is to say, that the sauce to which the term is applied is the sauce made by E. McIlhenny of New Iberia, La., and his successors in title."

The rulings mentioned are duly presented for review. The ground urged in support of the motion to cancel and eliminate was that the finding at which that motion was aimed was unsupported by evidence. In support of the motion to incorporate the proposed finding above set out it was contended that the uncontroverted evidence justified such a finding. Another finding made by the court was the following:

"The plaintiff has suffered damage by the publication of the circulars and letters of defendant amounting to the sum of $1,000."

Before Edmund McIlhenny began the manufacture and sale of his sauce, the word "Tabasco" had an established meaning. It was and is the name of one of the states of Mexico. In a suit quite similar to the pending one, brought by a rival pepper sauce manufacturer against

the defendant's immediate predecessor in business, the Supreme Court of Louisiana decided that the plaintiff in that suit was entitled to recover damages resulting from conduct of the defendant's predecessor in claiming, by letters and circulars addressed to dealers in pepper sauce, that it had the exclusive right to use the word "Tabasco" as a designation of its product, and threatening with suits for infringement all persons who might buy, sell, or use the product manufactured by the plaintiff in the suit, with the object and purpose of frightening dealers and users of the product of the plaintiff in the suit from buying, selling, or using that product. That court, in deciding that case, following a ruling made by the Court of Appeals of the District of Columbia in the case involving the cancellation of the registration by the defendant's predecessor of the word "Tabasco" as a trade-mark, ruled that that word was not subject to exclusive appropriation, because it had a geographical meaning. New Iberia Extract Co. v. McIlhenny's Son, 132 La. 149, 61 South. 131.

We understand it to be a contention of the counsel for the plaintiff in the pending suit that the previous rendition of such decisions in litigated cases to which the defendant's predecessor was a party had the effect of conclusively showing that the defendant was lacking in good faith in persisting in the assertion of an exclusive right which had been so explicitly ruled against in the only cases in which the question had been contested on its merits to a final conclusion. Such conclusive effect in favor of the plaintiff cannot be accorded to decisions rendered in favor of parties with whom he is not in privity, especially when those decisions are not reconcilable with later rulings which are authoritative and controlling. In the case of Baglin v. Cusenier Co., 221 U. S. 580, 31 Sup. Ct. 669, 55 L. Ed. 863, it was decided that the fact that the primary meaning of the word "Chartreuse" was geographical, being the name of a locality and of a monastery in France, did not prevent the acquisition of the exclusive right to use it as the designation of a liqueur made by the monks of the monastery of La Grande Chartreuse. Speaking of the use of the word by the monks as a designation of their product, the court said:

"If it be assumed that the monks took their name from the region in France in which they settled in the eleventh century, it still remains true that it became peculiarly their designation; and the word 'Chartreuse,' as applied to the liqueur which for generations they made and sold, cannot be regarded in a proper sense as a geographical name. It had exclusive reference to the fact that it was the liqueur made by the Carthusian monks at their monastery. So far as it embraced the notion of place, the description was not of a district, but of the monastery of the order—the abode of the monks—and the term in its entirety pointed to production by the monks."

In the case of Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629, the right of a manufacturer to use the words "The American Girl" as a trade-mark for shoes made by it was sustained. It was said in the opinion rendered in that case:

"We do not regard the word 'The American Girl,' adopted and employed by complainant in connection with shoes of its manufacture, as being a geographical or descriptive term. It does not signify that the shoes are

manufactured in America, or intended to be sold or used in America, nor does it indicate the quality or characteristics of the shoes. Indeed, it does not, in its primary signification, indicate shoes at all. It is a fanciful designation, arbitrarily selected by complainant's predecessors to designate shoes of their manufacture. We are convinced that it was subject to appropriation for that purpose, and it abundantly appears to have been appropriated and used by complainant and those under whom it claims."

The rulings just referred to establish the proposition that the fact that a word or expression has a geographical meaning does not prevent its appropriation as a trade-mark, or as the designation of a manufacturer's or dealer's product, when it is so used as not to have a geographical or descriptive signification, nor make legally impossible the assertion in good faith of a claim of exclusive right to use such word or expression for a nongeographical and nondescriptive purpose, even though such use may result or have resulted in its acquiring a new meaning, or new meanings separate and distinct from the one it had before. Uncontradicted evidence in the pending case was to the effect that, when Edmund McIlhenny adopted the word "Tabasco" in the designation of the pepper sauce manufactured and sold by him, he did not use it as a geographical or descriptive term. It is obvious that it did not indicate the place of manufacture. It did not indicate the kind of pepper which was the principal ingredient of the sauce, as that pepper was not then known by that name; it having afterwards acquired the name of Tabasco pepper, apparently because it was the pepper from which Tabasco sauce was made.

Much testimony was adduced to prove that the kind of pepper used in making the defendant's sauce was, at the time the testimony was given and for many years before, known and dealt in as "Tabasco pepper." This was not controverted. But there was no evidence tending to prove that, when the defendant's first predecessor in business adopted the word "Tabasco" as the designation of his sauce, that pepper had ceased to be an unnamed variety. Nor was there any evidence to support the conclusion that the word indicated the place of origin of the pepper from which the sauce was made. There was no evidence tending to prove that the first of such peppers, which were obtained and planted by Edmund McIlhenny, came from the state of Tabasco or from a locality having that name. The word as it theretofore had been used was not indicative of the quality, characteristics, or ingredients of the sauce in connection with which the defendant's predecessor first made use of it. We think the uncontroverted evidence was such as to call for favorable action on the motions made by the defendant to the effect that an above-quoted finding by the court be canceled and eliminated, and that the following be incorporated among the court's findings of fact:

"That the word 'Tabasco,' as applied to pepper sauce, indicates origin of manufacture; that is to say, that the sauce to which the term is applied is the sauce made by E. McIlhenny, of New Iberia, La., and his successors in title."

It is not to be denied that the decisions in the two cases last cited constitute such authoritative recognition of the legal propositions relied on to support the claim of an exclusive right to use the word

"Tabasco" in connection with a pepper sauce, continuously and persistently made, in the circumstances disclosed by the evidence, by the defendant and its predecessors for many years, as to negative the absence of good faith on the defendant's part in its assertions of that claim which occasioned the institution of this suit.

[7] The findings of fact, including the one which it has been held the defendant was entitled to have made, did not constitute a proper predicate for the judgment rendered. The gist of the action was the alleged assertion in bad faith by the defendant of a claim of exclusive right to the use of the word "Tabasco" in connection with a pepper sauce. One of the court's findings was to the effect that the claim of the defendant and its predecessors was made in good faith, and there was evidence to support that finding. Where one, believing himself to have an exclusive right to use a word as a designation of his goods, in good faith warns dealers against invasion of his supposed right, a mistake on his part as to the validity of his claim does not render him liable to an action by another, the sale of whose products was interfered with by the giving of such notice and warning. John W. Lovell Co. v. Houghton, 116 N. Y. 520, 22 N. E. 1066, 6 L. R. A. 363; Hovey v. Rubber Tip Pencil Co., 57 N. Y. 119, 15 Am. Rep. 470; 25 Cyc. 562. It may be assumed, without being decided, that there was evidence to support the finding that—

"The plaintiff has suffered damage by the publication of the circulars and letters of the defendant amounting to the sum of $1,000."

That finding by itself is not enough to support the legal conclusion that the defendant was liable for the pecuniary loss sustained by the plaintiff. Findings of fact which were made negative the conclusion that the defendant was guilty of the alleged conduct which was made the basis of the plaintiff's demand. It follows that the judgment presented for review cannot be sustained. It is reversed, and a judgment in favor of the defendant will be here entered.

Reversed.