## TRAPPEY et al. v. McILHENNY CO.

(Circuit Court of Appeals, Fifth Circuit. May 23, 1922.)

No. 3846.

1. **Trade-marks and trade-names and unfair competition ☞45½, New, vol. 7A Key-No. Series—Cancellation of registration does not extinguish rights which the registration did not give.**

   Cancellation of the registration of a trade-mark, at the instance of a competitor, as a geographical name, does not preclude the registrant from asserting the exclusive right to the use of the name to designate its product to which the name is applied.

2. **Trade-marks and trade-names and unfair competition ☞71—Long use may give exclusive right in geographical name.**

   Where one has marked his goods with a geographical name for so long a time that they have become known in the market by that name, the use of that name to describe goods of. a subsequent maker will be restrained as unfair competition.

3. **Trade-marks and trade-names and unfair competition ☞75—Unfair competition; actual intent to mislead not essential.**

   To warrant relief against unfair competition, an actual intention to mislead the public need not be proved; but it is enough if such result is probable.

4. **Trade-marks and trade-names and unfair competition ☞71—Unfair competition to use trade-name of another.**

   That one's name is added to the trade-name of another is not a sufficient distinction to prevent a probable deception.

5. **Trade-marks and trade-names and unfair competition ☞71—Complainant held entitled to protection in use of "Tabasco" as trade-name.**

   Complainant and its predecessor for nearly 30 years was the sole manufacturer of a pepper-sauce sold under the trade-name "Tabasco," which became widely known to users as designating complainant's product. *Held*, that the use by defendant on the labels of a pepper-sauce made and sold by him of the name "Tabasco," in a manner calculated to lead purchasers to believe that it was complainant's product, constituted unfair competition, against which complainant was entitled to an injunction.

Appeal from the District Court of the United States for the Eastern District of Louisiana; Rufus E. Foster, Judge.

Suit in equity by the McIlhenny Company against B. F. Trappey and others. Decree for complainant, and defendants appeal. Affirmed.

E. Howard McCaleb, of New Orleans, La., William L. Symons, of Washington, D. C., and Emmet Alpha, of Franklin, La., for appellants.

Walker B. Spencer, Philip S. Gidiere, and Esmond Phelps, all of New Orleans, La., Joseph S. Clark, of Philadelphia, Pa., and Edward S. Rogers, of Chicago, Ill., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. This appeal is prosecuted to reverse a decree of the United States District Court for the Eastern District of Louisiana, enjoining the appellants (defendants below) from using the word "Tabasco" to describe a pepper-sauce made by them. The facts, briefly stated, show that about 1850, Col. Maunsell White began growing in Louisiana certain peppers coming from Mexico, which were called

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Tabasco peppers. From these peppers he made a pepper-sauce known as "Maunsell White Sauce," and sometimes as "Tabasco Pepper-Sauce." These sales appear to have ceased by the year 1867.

Beginning with the year 1868, E. McIlhenny began the manufacture and sale of a red pepper-sauce from peppers supposed to have come from Tabasco, Mexico, which he labeled "Tabasco Pepper-Sauce"; the word "Tabasco" being separated from the words "Pepper-Sauce" and the condiment being styled "Tabasco." This sauce was manufactured by McIlhenny, and after his death by his wife and children, by whom the complainant company was formed, which has succeeded to this continuous business, its rights and good will.

The defendant B. F. Trappey was for years employed as a blacksmith on the plantation of the McIlhennys on which these peppers were grown. In this way he became acquainted with the formula for making the sauce, and was well aware of the large business which the McIlhennys had built up in the manufacture and sale of this sauce.

Until the year 1896, for nearly 30 years, the McIlhennys conducted this manufacture and sale without interference as to the name "Tabasco," and largely extended the same, and the evidence warrants the conclusion that by the efforts of the McIlhennys this sauce, under the name of "Tabasco," became widely known and used, so much so that the consumer, in asking for it, called for "Tabasco," and by such designation meant the "Tabasco" manufactured by the McIlhennys. They and their successors in title have continuously pursued and are still carrying on such manufacture and sale.

The District Court found as facts that plaintiff and its predecessors in title have manufactured a red pepper-sauce, which has been put on the market and extensively advertised and sold by them under the trade-mark "Tabasco" for over 50 years; that as far back as 1850 a red pepper-sauce was made by Col. Maunsell White from peppers known as "Tabasco" and sold to the retail trade at New Orleans under that name; that in 1851 advertisements of real extract of red Tabasco peppers appeared in the Daily Delta, a New Orleans newspaper, and similar advertisements and sales of pepper-sauce under the name "Tabasco" occurred at various times up to 1867; that it was not shown that any persons except the McIlhennys used the word "Tabasco" thereafter for many years to identify their pepper sauce; that, conceding its former use, it had been abandoned by all persons when the McIlhennys adopted it; that the word "Tabasco," as applied to pepper-sauce, indicates origin of manufacture, and the sauce to which it relates is the sauce made by E. McIlhenny, of New Iberia, La., and his successors in title.

[1] Appellants insist that the predecessors of McIlhenny Company registered the word "Tabasco" as a trade-mark under the federal statutes, and such registration had been canceled on the ground that Tabasco was a geographical term, and could not therefore be properly registered as a technical trade-mark, such cancellation being approved by the Court of Appeals in the District of Columbia (McIlhenny Co. v. New Iberia, etc., Co., 34 App. D. C. 430; McIlhenny Co. v. Trappey, 51 App. D. C. 216, 277 Fed. 615); that this action is conclusive against

the right of appellee to the exclusive use of the word "Tabasco." This contention was considered by this court in McIlhenny Co. v. Gaidry, 253 Fed. 613, 616, 165 C. C. A. 239, 242, where it is said:

"The cancellation, on the opposition of a competitor, of the registration by the defendant's predecessor of the word 'Tabasco' as a trade-mark under the federal Trade-Mark Act of February 20, 1905 (33 Stat. 724, c. 592 [9 U. S. Comp. Stat. Ann. 1916, section 9485 et seq.]), does not stand in the way of the assertion by the defendant that it has the exclusive right which it claims in this suit. That act, which made provision for the registration of trade-marks 'used in commerce with foreign nations, or among the several states, or with Indian tribes,' and which conferred certain benefits upon registrants thereunder, did not purport to make registration under it the prerequisite to the acquisition or continued existence of an exclusive right to use a word or symbol as a trade-mark. If the defendant's predecessor had the exclusive right which the defendant asserts in this suit, that right was not extinguished by the cancellation of the registration mentioned. If the trade-mark exists, it exists independently of the registration. The cancellation of a registration does not extinguish a right which the registration did not confer. Edison v. Thomas A. Edison, Jr., Chemical Co. (C. C.) 128 Fed. 1013; Capewell Horse Nail Co. v. Mooney, 172 Fed. 826, 97 C. C. A. 248. Neither of the incidents relied upon by the plaintiff is inconsistent with the assertion in good faith by the defendant that it has the exclusive right to use the word 'Tabasco' in connection with pepper-sauce."

We adhere to this ruling. After the complainant and its predecessors had conducted its business for many years, and had built up a large demand for "Tabasco," the defendant began the vending of a pepper-sauce made from similar peppers to those used by the complainant. The name applied to this sauce was Tabasco—Pepper-Sauce. The word "Tabasco" was printed on a line alone, with a heavy dot or circle before and after the word, thus separating it from the words "Pepper-Sauce," on the line below. It is evident that the purpose was to designate the sauce by the single word "Tabasco." This, whether intended or not, was calculated to mislead the consumer into believing that he was receiving the sauce manufactured by complainant, and to take advantage of the trade which complainant and its predecessors in title had built up by years of effort.

While it is true that geographical names generally cannot be appropriated as trade-marks—

"the rule is, that a subsequent trader may not use even common terms or symbols, his own name, or a geographical or descriptive word, in such a manner as to cause his goods to be known in the market by the same name as that by which a prior trader's similar goods are already known and called for by the purchasing public. The trade-name for the goods of a particular trader may not be used by another as the trade-name for his similar rival goods. The subsequent trader, however, may use such terms descriptively, to tell the truth about his goods, describing them, telling by whom they were manufactured and other like matters, because such terms are publici juris in their primary sense, and cannot be exclusively appropriated by any one. But use, as a name or title, is not a permissible use, because by reason of the acquired meaning such a use carries with it a false representation that the goods of that name are those of the prior trader." 38 Cyc. 722, 771, 772.

[2] Where one has marked his goods with a geographical name for so long a time that they have become known in the market by that name, the use of that name to describe goods of a subsequent maker will be restrained as unfair competition. Wotherspoon v. Currie, L. R. 5 H. L.

508; Thompson v. Montgomery, L. R. 41 Ch. D. 35; American Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 53 N. E. 141, 43 L. R. A. 826, 73 Am. St. Rep. 263; Baglin v. Cusenier Co., 221 U. S. 580, 31 Sup. Ct. 669, 55 L. Ed. 863. The Waltham Watch Case is instructive on this point. In that case an injunction was sought—

"to enjoin the defendant from advertising its watches as the 'Waltham Watch' or 'Waltham Watches,' and from marking its watches in such a way that the word 'Waltham' is conspicuous. The plaintiff was the first manufacturer of watches in Waltham, and had acquired a great reputation before the defendant began to do business. It was found at the hearing that the word 'Waltham,' which originally was used by the plaintiff in a merely geographical sense, now, by long use in connection with the plaintiff's watches, has come to have a secondary meaning as a designation of the watches which the public has become accustomed to associate with the name. * * * The defendant's position is that, whatever its intent and whatever the effect in diverting a part of the plaintiff's business, it has a right to put its name and address upon its watches; that to require it to add words which will distinguish its watches from the plaintiff's in the mind of the general public is to require it to discredit them in advance; and that, if the plaintiff by its method of advertisement has associated the fame of its merits with the city where it makes its wares, instead of with its own name, that is the plaintiff's folly, and cannot give it a monopoly of a geographical name, or entitle it to increase the defendant's burdens in advertising the place of its works.

"In cases of this sort, as in so many others, what ultimately is to be worked out is a point or line between conflicting claims, each of which has meritorious grounds and would be extended further were it not for the other. Ferrule Co. v. Hills, 159 Mass. 147, 149, 150, 34 N. E. 85. * * * It is desirable that the defendant should be free to manufacture watches at Waltham, and to tell the world that it does so. The two desiderata cannot both be had to their full extent, and we have to fix the boundaries as best we can. On the one hand, the defendant must be allowed to accomplish its desideratum in some way, whatever the loss to the plaintiff. On the other, we think the cases show that the defendant fairly may be required to avoid deceiving the public to the plaintiff's harm, so far as is practicable in a commercial sense. It is true that a man cannot appropriate a geographical name; but neither can he a color, or any part of the English language, or even a proper name to the exclusion of others whose names are like his. Yet a color in connection with a sufficiently complex combination of other things may be recognized as saying so circumstantially that the defendant's goods are the plaintiff's as to pass the injunction line. New England Awl & Needle Co. v. Marlborough Awl & Needle Co., 168 Mass. 154, 156, 46 N. E. 386. So, although the plaintiff has no copyright on the dictionary, or any part of it, he can exclude a defendant from a part of the free field of the English language, even from the mere use of generic words, unqualified and unexplained, when they would mislead the plaintiff's customers to another shop. Reddaway v. Banham, [1896] A. C. 199. So the name of a person may become so associated with his goods that one of the same name coming into the business later will not be allowed to use even his own name without distinguishing his wares. Brinsmead v. Brinsmead, 13 Times L. R. 3; Reddaway v. Banham, [1896] A. C. 199, 210. See Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 204, 16 Sup. Ct. 1002; Cream Co. v. Keller, 85 Fed. 643. And so, we doubt not, may a geographical name acquire a similar association with a similar effect. Montgomery v. Thompson, [1891] A. C. 217. Whatever might have been the doubts some years ago, we think that now it is pretty well settled that the plaintiff, merely on the strength of having been first in the field, may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful names and advertisements from deceitfully diverting the plaintiff's custom." Amer. Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 86, 87, 53 N. E. 141, 142 (43 L. R. A. 826, 73 Am. St. Rep. 263).

This is true, even if the name be such that it could not be registered as a technical trade-mark. Bissell Chilled Plow Works v. T. M. Bissell Plow Co. (C. C.) 121 Fed. 357, 365. This has been well stated in the United States Circuit Court of Appeals for the Sixth Circuit by Lurton, Circuit Judge, as follows:

"But when the word is incapable of becoming a valid trade mark, because descriptive or geographical, yet has by use come to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition, and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his article as the product of another. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 549, 11 Sup. Ct. 396, 34 L. Ed. 997; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247; Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Elgin Nat. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Bennett v. McKinley, 13 C. C. A. 25, 65 Fed. 505." Computing Scale Co. v. Standard Computing Scale Co., 118 Fed. 965, 967, 55 C. C. A. 459, 461.

The basis of the right to prevent the use of an unregistered trade-mark is the recognition that—

"Where a party has been in the habit of labeling his goods with a distinctive mark, so that purchasers recognize goods thus marked as being of his production, others are debarred from applying the same mark to goods of the same description, because to do so would in effect represent their goods to be of his production and would tend to deprive him of the profit he might make through the sale of the goods which the purchaser intended to buy. Courts afford redress or relief upon the ground that a party has a valuable interest in the good-will of his trade or business, and in the trade marks adopted to maintain and extend it. The essence of the wrong consists in the sale of the goods of one manufacturer or vendor for those of another. Canal v. Clark, 13 Wall. 311, 322; McLean v. Fleming, 96 U. S. 245, 251; Manufacturing Co. v. Trainer, 101 U. S. 51, 53; Menendez v. Holt, 128 U. S. 514, 520; Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 546." Hanover Milling Co. v. Metcalf, 240 U. S. 403, 412, 36 Sup. Ct. 357, 360 (60 L. Ed. 713).

This may be true of a geographical name:

"The name of a person or a town may have become so associated with a particular product that the mere attaching of that name to a similar product without more would have all the effect of a falsehood. Walter Baker & Co. v. Slack, 130 Fed. 514. An absolute prohibition against using the name would carry trade marks too far. Therefore the rights of the two parties have been reconciled by allowing the use, provided that an explanation is attached. Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 200, 204; Brinsmead v. Brinsmead, 13 Times L. R. 3; Reddaway v. Banham, [1896] A. C. 199, 210, 222; Amer. Waltham Watch Co. v. United States Watch Co., 173 Mass. 85, 87; Dodge Stationery Co. v. Dodge, 145 Cal. 380. Of course the explanation must accompany the use, so as to give the antidote with the bane." Herring, etc., Safe Co. v. Hall's Safe Co., 208 U. S. 554, 559, 28 Sup. Ct. 350, 352 (52 L. Ed. 616).

[3-5] That there was an actual intention to mislead the public need not be proved. It is enough if such result is probable. Bissell Chilled Plow Works v. T. M. Bissell Plow Co. (C. C.) 121 Fed. 357, 372, and the cases there cited; 38 Cyc. 773, 784.

That one's name is added to the trade-name is not a sufficient distinction to prevent the probable deception. 38 Cyc. 792.

That the sauce had been previously manufactured as "Tabasco Pepper-Sauce" does not, under the facts of this case, prevent the com-

plainant from having acquired a trade-name in the word "Tabasco." The proof shows that whatever manufacture had been had was quite restricted, that the maker had not used the word "Tabasco" as the trade-name of his product, and that it had been abandoned. This left the field open to McIlhenny, who entered thereon, embarked in a wide introduction of this sauce as "Tabasco," built up a large business, and established the name as descriptive of this exclusive production during the business of many years. Deitsch et al. v. Geo. R. Gibson Co. (C. C.) 155 Fed. 383; Raymond v. Royal Baking Powder Co., 85 Fed. 231, 29 C. C. A. 245.

The appellants insist that, in a conversation had with John A. McIlhenny, representing the then proprietor of appellee's business, it was conceded that appellant Trappey had the right to use the word "Tabasco" to describe the sauce made by him, and that appellee is now estopped to deny such right. This conversation is denied by John A. McIlhenny. But, even if it be conceded to have taken place, we agree with the District Court that no estoppel would arise therefrom, in view of the correspondence which followed soon after between the attorney for the McIlhennys and Trappey, in which the exclusive right to the use of the word "Tabasco" was insisted upon in their behalf.

The other points arising in this case are covered by the opinion of this court in McIlhenny Co. v. Gaidry, 253 Fed. 613, 616, 165 C. C. A. 239. Upon the whole case, we think that the complainant was entitled to an injunction restraining the defendant from using the word "Tabasco" as the name, or as part of the name, of the sauce manufactured and sold by him. The injunction should go to the extent of preventing defendant from using the word "Tabasco" as the name or description of the sauce manufactured by him, but should not prevent his stating that the sauce is made from Tabasco peppers. Baglin v. Cusenier Co., 221 U. S. 580, 600, 31 Sup. Ct. 669, 55 L. Ed. 863.

The decree granting the injunction in this case is affirmed, so far as it enjoins the appellants from using the word "Tabasco" as the name of the sauce manufactured by them, or in any manner to designate or describe said sauce, or from using the word "Tabasco" otherwise than to state that the sauce manufactured by appellants is made from Tabasco peppers, said statement to be made in such manner as clearly to distinguish the sauce made by appellants from that manufactured by appellee.

As thus modified, the decree of the District Court is affirmed.