CAPEWELL HORSE NAIL CO. v. MOONEY.

(Circuit Court of Appeals, Second Circuit. August 20, 1909.)

No. 289.

1. TRADE-MARKS AND TRADE-NAMES (§ 84*)—REGISTRATION OF MARK—COMMON-LAW TRADE-MARK.

In a suit for infringement of a trade-mark, objection to the validity of complainant's registration of the mark was not material where complainant had a common-law trade-mark in the device alleged to have been infringed.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 84.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 71*)—INFRINGEMENT—UNFAIR COMPETITION.

The use of complainant's trade-mark on horseshoe nails to simulate complainant's nails, and produce confusion in the minds of dealers and users, was unfair competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. § 71.*

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

3. COURTS (§ 292*)—JURISDICTION—INFRINGEMENT OF TRADE-MARK.

A bill may be maintained in the federal Circuit Court to restrain the infringement of a common-law trade-mark where other jurisdictional facts are present.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 834; Dec. Dig. § 292.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 19*)—CHARACTER OF MARKS—ORNAMENTATION.

That a trade-mark, consisting of a check figure formed by intersecting lines impressed on the bevel face beneath the edge of horseshoe nails, was an ornamental device which added to the appearance of the nails, and also came to represent quality, did not prevent it from operating as a valid trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 22; Dec. Dig. § 19.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 84*) — INFRINGEMENT — NECESSITY — HORSE NAILS.

It was no defense to a suit to restrain the infringement of plaintiff's trade-mark consisting of a check figure formed of intersecting lines impressed on the bevel face beneath the heads of horseshoe nails that such mark was produced while the nail was passing through one of the rolls of the manufacturing machinery by which the nail was gripped and held in place; it not appearing that the pattern of the gripping surface of the roll was required to be the same as the trade-mark stamped on complainant's nails in order to their successful manufacture.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 84.*]

Appeal from the Circuit Court of the United States for the Northern District of New York.

Suit by the Capewell Horse Nail Company against Walworth M. Mooney. From a decree (167 Fed. 575) for complainant, defendant appeals. Affirmed.

This cause comes here upon appeal from a decree of the Circuit Court, Northern District of New York, enjoining defendant from making, using, or

selling or offering for sale horse nails bearing the trade-mark of complainant such as have been heretofore made and sold by defendant or bearing any mark so similar to complainant's trade-mark as to be likely to deceive purchasers and the public.

The opinion of the Circuit Court is reported in 167 Fed. 575.

Robert W. Hardie, for appellant.

Edmund Wetmore and Oscar W. Jeffery, for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The mark consists of a pattern of small checks, formed by lines crossing each other diagonally, stamped upon the under or bevelled side or front face of the head of the horseshoe nails and substantially covering the surface of that particular face. It is not a rhomboid, but has four sides, the upper and lower sides being parallel but unequal, the upper being the longest. The right and left sides are of equal length, but not parallel. Within these boundaries are the check marks. No complaint is made of the marking or dressing up of the packages in which defendant's nails are sold by him, but it is in evidence that such packages are frequently broken up and the contents sold to users by the pound, and that users are accustomed to look to markings on the nail itself as identifying the maker. Various marks have been placed on the front face of nail heads by different makers—initials, etc.—and in the case of one maker a globe with intersecting meridian lines (readily distinguishable from complainant's mark). There is also some evidence, not especially persuasive, that check marks had been used on the top of the head as the distinguishing mark of another maker. But the record does not show that this particular mark on the front face was in use before its adoption by complainant and its association in the public mind with horse nails made by it.

Complainant registered this trade-mark, No. 56,605, dated October 6, 1906, and the bill charges infringement of such registration. Several objections to the validity of this registration are urged by defendant, but it is not necessary to discuss that branch of the case, since the court found that complainant had a common-law trade-mark, and that defendant had placed the mark on the front face of his nail heads "for the purpose of simulating complainant's nails and producing confusion in the minds of dealers and users and selling his nails as those of complainant's make." Such acts constitute unfair competition in trade. It is idle to contend that the Circuit Court had no jurisdiction to pass upon the question of common-law trade-mark. There is the requisite diversity of citizenship, and the averment in the complaint as to the statutory amount in dispute is not denied in the answer, nor was any such objection interposed by plea.

The opinion of Judge Ray is most exhaustive and no useful purpose would be served by a rediscussion of the facts. He found that:

"This well-defined check mark was first appropriated and adopted by the complainant as a trade-mark and as its trade-mark, and that it was so adopted and appropriated and thereafter used primarily for the purpose of identifying and distinguishing horse nails of complainant's manufacture from those of all other makers and not as an incident of manufacture or primarily for ornamentation."

Also that:

"The fact of such adoption and appropriation was extensively and sufficiently made known to the public by actual and continued use by complainant as such, same being affixed to its nails, and also by publications and otherwise; that by such use thereof on the goods of complainant's manufacture such check mark came to be generally known to the public as complainant's trade-mark and its goods bearing such mark on the nail came to be publicly known and distinguished as those of complainant's make."

The evidence tends to establish the affirmative of the first of these findings, but the second of them is the more important one and the record fully sustains it. The improved appearance of the nail was immediately taken up as a feature for advertising, and was so advertised as the distinctive characteristic of nails made by the Capewell Company. In Capewell Horse Nail Co. v. Putnam Nail Co. (C. C.) 140 Fed. 670, a suit to restrain infringement of this same mark, Judge Colt held that complainant had not proved that it had ever claimed the check as a trade-mark nor that there was any association in the public mind of the check pattern with complainant's nails. Except for a circular issued in 1897 calling attention to the check mark as indicating Capewell nails (which is in the record here), we do not know what was in evidence before Judge Colt, but it must be presumed that the proof before us as to the distribution of nearly 100,000 of these circulars among blacksmiths and hardware merchants, as to the statements of salesmen to customers, and as to the recognition of complainant's nails by this mark was lacking in that case. As to the arguments advanced by defendant that check marks have been used on other articles as ornaments or for purposes of utility, that the mark is ornamental and that such circumstance led to its adoption, that it is indefinite and that complainant uses a different mark on its packages from the one applied to its nails, Judge Ray's opinion sufficiently sets forth the law, and we find no error in his conclusions.

The real point in the case is whether the mark which defendant stamps on its nails, a Chinese copy of complainant's, is put there as a necessary incident of the process of manufacture. Checks or knurling of similar pattern had long been in use to form gripping surfaces, as in forceps, tweezers, vises, etc., where they are cut on the interior surfaces of the jaws of the gripping devices. They had also been used on the handles of various tools to prevent the slipping of the hand of the workman when grasping the tools. Conceding that the general public has the right to use this check mark to form a gripping surface when necessary, the Circuit Court states the proposition as follows:

"Whether the defendant used the check mark in manufacturing horseshoe nails, as a gripping surface or for the purpose of imitating the complainant's mark and manufacture so as to pass off his nails as those of complainant."

The mark on the face of the nail head is produced by a check mark on one of the rolls between which defendant's nails are passed, and he contends that without its use as a gripping surface the nail will frequently slip and a large percentage of imperfect nails will be found in the output.

The record contains a large amount of evidence on this branch of the case, and here, as in the Circuit Court, the proposition above stated

has been argued at great length and with great ability. The most we can say is that the proof leaves it doubtful whether or not the defendant could economically and efficiently manufacture its nails without a gripping surface on its small roller which would impress permanent marks on the front face of the nail head.

On this branch of the case, defendant, who cannot reasonably dispute that his mark there placed is substantially like complainant's, has the burden of proof. But we concur with Judge Ray in the conclusions that:

"If it was necessary to have a gripping surface on the roller, it was not necessary to use the only one of many which would produce [on the face of the nail head] the exact counterpart of complainant's distinguishing mark, which had come to be known in the trade and among manufacturers and dealers in and users of horseshoe nails; [and that] the production of this check mark on the defendant's nails is not a necessary incident of manufacture."

The decree is affirmed, with costs.