CAPEWELL HORSE NAIL CO. v. GREEN et al.

(Circuit Court, N. D. New York. October 20, 1910.)

1. TRADE-MARKS AND TRADE-NAMES (§ 58*)—INFRINGEMENT—HORSE NAILS.

Complainant, a manufacturer of horse nails, adopted a trade-mark, consisting of a check figure formed of intersecting lines impressed on the under or bevel face of the heads of the nails. Defendants manufactured a nail of substantially the exact form of complainant's nail, and to the eye not distinguishable therefrom. On the bevel face of the head of defendants' nail was placed a check mark like complainant's, covering two-thirds of such bevel face in the form of two triangles, which check was divided by an interposed triangular smooth surface covering the remaining third of the bevel face. *Held*, that defendants' mark was calculated to deceive purchasers, and so resembled complainant's mark as to constitute an infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 66, 67; Dec. Dig. § 58.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 93*)—USE—LICENSE—EVIDENCE.

In a suit to restrain infringement of a trade-mark, evidence *held* insufficient to sustain defendants' burden of proving a verbal license to use complainant's mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 93.*]

In Equity. Suit by the Capewell Horse Nail Company against Edward M. Green and others to restrain an alleged infringement of complainant's common-law trade-mark, used in the manufacture and sale of horse nails. Decree for complainant.

Edmund Wetmore and Oscar W. Jeffery, for complainant.
Robert W. Hardie, for defendants.

RAY, District Judge. The validity and character of complainant's trade-mark was passed upon by this court in Capewell Horse Nail Co. v. Mooney, 167 Fed. 575, affirmed by Circuit Court of Appeals 172 Fed. 826, 97 C. C. A. 248. We have here the same evidence given in that case, with some in addition, and nothing to the contrary, and the holding is that the complainant is, and since 1892 has been, the owner of the trade-mark. The complainant's trade-mark covers the bevel face of the head of the horseshoe nail, and is a distinguishing mark. With that mark upon the nail, it is everywhere and easily recognized as complainant's nail. It cannot be successfully contended, however, that the complainant is entitled to all check marks of every shape, form, and description; as, for instance, if defendant should make use of a small cross covering say one-third of such bevel face, the cross made up of lines crossing each other either at right angles or diagonally, so as to form a check mark, I should be disinclined to hold it an infringement. There the cross would be the distinguishing or characteristic feature.

But this is not what the defendants do. They make a nail of substantially the exact form of complainant's nail, and to the eye not distinguishable from it, and on the bevel face of the head place a check mark like complainant's covering two-thirds of such bevel face in the

form of two triangles, which check mark is divided by an interposed triangular smooth surface covering the remaining third of such bevel face. In my judgment, following the trade-mark, purchasers and users would not suspect that this nail was made by any other than the Capewell Company. Knowing the Capewell trade-mark, and looking at the defendants' nail, a purchaser or user would assume it to be a Capewell nail, unless specifically informed that nails with a check mark on the beveled side of the head, such check mark being formed of three triangular spaces, two check marked and the third one interposed plain, were not Capewell nails, but those of the Hoopeston Company. Such a close copy and imitation, within all the authorities, is an infringement. It tends to confusion and deception. The resemblance is such as to deceive an ordinary purchaser giving such attention to the nails and the marks thereon as such a purchaser ordinarily gives, and cause him to purchase the one supposing it to be the other.

But it is said that defendants' nails are put up in packages, boxes, or cartons, with the name of the dealer thereon, and that one purchasing a package, box, or carton is informed by the name on the package that the nails are not Capewell's. This may be so in some cases, and may not be so. It is matter of common knowledge that manufacturers make and put up goods of all kinds, nearly, in boxes or packages for customers who are retail dealers, marked with the name of such customer or retail dealer, and with nothing except the trade-mark on the goods themselves to indicate the maker. This is shown to be the practice of the Hoopeston Horse Nail Company. Enos & Sanderson, of Buffalo, N. Y., and John G. Merkel Company, of Newark, N. J., are supplied by the Hoopeston Company with nails of its make having (on the nail) the check mark complained of, put up in packages marked "Enos" and "Merkel Special," respectively, with nothing to indicate they are of the Hoopeston make. So soon as the package is open and the nails displayed in store or shop, they at once pass for or are easily passed off as Capewell nails. Mistake, deception, and fraud are easy, and the use of this mark complained of is entirely unnecessary. Purchasers and users understand that the names on packages do not necessarily indicate the maker, but also understand that the trake mark or name on the articles themselves do.

The defendants say they have a license, verbal, from the Capewell Company to use the mark, and that the complainant is estopped to complain of their use of the mark complained of, having consented thereto, acquiesced therein, and led the Hoopeston Company to manufacture and put on the market large quantities of these nails and invest large sums of money in the business. The burden of establishing this alleged defense was on the defendants, and I do not think they have sustained it by a preponderance of satisfactory evidence. The evidence, being contradicted, and in some aspects improbable, fails to convince the mind.

A Mr. Hamilton, the secretary and treasurer of the Hoopeston Company, says that in September, 1907, after that company had learned that the Capewell Company complained of the use by it of this check

mark on the beveled face of the head of the nail (covering the entire face), he saw Mr. A. W. C. Williams, the manager of the Capewell Company, at the office of the Capewell Company, in Hartford, Conn., and that in that interview something was said in regard to the marking now in use by the Hoopeston Company on its Peerless nail head. Hamilton says:

"Mr. Williams called my attention to a card that had been sent out by the Hoopeston Horse Nail Company, which had been sent in to him by one of their salesmen, showing a change in the marking of the nail, and calling the attention of the trade to it. Mr. Williams spoke of having received my letter, and stated that he was very much pleased with the action taken by the company, and I then assured him that it was not the intention of our company to infringe upon the trade-mark of his company or any other company; that we could not afford to do so, and that we felt grateful to him for calling our attention to this infringement, and that he had a card there showing the different markings, and no objections were raised to the markings of the new nail by Mr. Williams."

The card in question reads as follows:

"Peerless Horse Nails. Caution. It having been repeatedly brought to our attention that inferior nails were being susbtituted for our 'Peerless,' because of similar marking under the head, we have changed our mark to make it more distinctive, that our numerous customers may be protected in getting the best.                          Hoopeston Horse Nail Co.,
                                              "Hoopeston, Ill."

This card, which defendants say they were sending out to the trade, had printed thereon the figure of two horse nails; one, under the head "old mark," being a Chinese copy of the complainant's nail, and the other, under the head "new mark," being the same as the other, except that the check mark on the bevel face is divided into the three triangles, the intermediate one not being checked. The card itself emphatically states that the Hoopeston Company has changed its mark to make it more distinctive; that is, to make the check mark covering the bevel face of the head more distinctive. The Hoopeston Company claims the old check mark as its mark, and has made the change to make it more distinctive. The Capewell Company was then engaged in litigation to establish this check mark as its common-law trade-mark, and it is not credible that Williams, the manager of the Capewell Company, would have expressed contentment or satisfaction with the issue of such a card by the Hoopeston Company.

This would have been an admission that the check mark was not the trade-mark of the Capewell Company, but the mark of the Hoopeston Company, and an acquiescence in that company continuing to use it when made "more distinctive." Mr. Williams denies the alleged conversation, and denies that this card was present at the talk he did have with Hamilton. It is oath against oath in any event. But September 29, 1909, after the decision of the Mooney Case by the Circuit Court of Appeals, above referred to, the Capewell Company wrote the Hoopeston Company, calling attention to their infringement and requesting its discontinuance. October 2, 1909, the Hoopeston Company replied, but neither made nor indicated any claim that the Cape-

well Company had at any time or in any manner consented to its' making or putting on the market the nail now in question, or acquiesced in its doing so. I find other facts and circumstances tending to the conclusion that the complainant company never assented to or acquiesced in the making of the nail complained of. I find that this defense is not sustained by a fair preponderance of evidence.

The result is that there will be a decree for the complainant, substantially as prayed for, with costs.