## McILHENNY CO., v. BULLIARD.

(District Court, W. D. Louisiana. May 17, 1920.)

### No. 22.

1. **Trade-marks and trade-names** ⊙—7—"Tabasco" valid trade-mark for pepper-sauce.

   Complainant's predecessors *held* to have acquired a valid trade-mark in the word "Tabasco," as applied to pepper-sauce, which right continued in his successors in business; the trade-mark also *held* infringed.

2. **Trade-marks and trade-names** ⊙—11—Trade-mark right not extinguished by expiration of patent.

   Where the manufacturer of a pepper-sauce, after using the name "Tabasco" as a trade-mark for some years, patented a process for making his pepper-sauce, but after four years abandoned its use, and adopted a new formula, but continued the use of the trade-mark for his product, with which it was identified, and the trade-mark and not the process gave commercial value to the article, the expiration of the patent *held* not to have divested him of his right in the trade-mark.

3. **Trade-marks and trade-names** ⊙—70(4)—Unfair competition in dress of product.

   Defendant *held* chargeable with unfair competition in the dressing of pepper-sauce made and sold by him, in copying on the labels reading matter from complainant's labels and in making the bottles, labels, and cartons so similar to complainant's, which have been long in the market, as to be likely to, and apparently intended to, deceive ordinary purchasers.

---

In Equity. Suit by the McIlhenny Company against Ed Bulliard. Decree for complainant.

Joseph S. Clark, of Philadelphia, Pa., Charles Payne Fenner, of New Orleans, La., and Edward S. Rogers, of Chicago, Ill., for plaintiff.

Emmet Alpha, of Franklin, La., for defendant.

JACK, District Judge. Plaintiff, McIlhenny Company, a corporation of the state of Maine, which, with its predecessors, for many years past, has manufactured at Avery Island, La., a condiment known as "Tabasco Pepper-Sauce," brings this action against defendant, Ed Bulliard, to enjoin him from using the word "Tabasco," which plaintiff claims as its trade-mark, in the designation of a pepper-sauce manufactured at a neighboring town and sold by him under the name of "Evangeline Tabasco Sauce," and, further, for injunction to restrain him from employing, in connection with the manufacture, advertisement, and sale of such sauce, wrappers, cartons, or packages so resembling plaintiff's as to be calculated to induce the belief that his product is that of the plaintiff. With these demands plaintiff couples the prayer that defendant be decreed to account to plaintiff for all profits which he has made by reason of alleged infringement of plaintiff's trade-mark.

The defendant, in answer, denies that plaintiff or its predecessors now use, or have ever used, the word "Tabasco" as a trade-mark or identifying name for sauce, and specially avers that the word "Tabasco" could not and cannot be appropriated as a trade-mark, because it is geographical and descriptive; that plaintiff continually acquiesced in the descriptive use of the word "Tabasco," and never made a bona fide attempt to establish the trade-mark it now asserts; and that any rights that plaintiff may have had in the name as a trade-mark were lost by the patenting of the process and the expiration of such patent. In answer to plaintiff's demands, based on alleged unfair competition, defendant denies that there is any fraudulent similarity in the bottles, cartons, or packages containing his sauce, which might cause it to be taken for that of the plaintiff.

The case was submitted on a statement of facts, from which it appears that in 1865 or 1866 Edmund McIlhenny, a planter on Avery Island, was given a few peppers supposed to have been brought from the state of Tabasco, Mexico. He planted the seed, and in 1866 made a pepper-sauce from the peppers raised, which he called "Petite Anse Sauce," "Petite Anse" being the French name for the island on which he lived. The sauce proved palatable and popular, and in 1868 he decided to make a business of its manufacture and sale. There was then on the market a similar sauce, manufactured in New Orleans by Maunsell White, and labeled "Maunsell White Pepper-Sauce." McIlhenny gave his sauce the distinctive name "Tabasco Pepper-Sauce." At this time these peppers were grown in the state of Tabasco, Mexico, and elsewhere in Mexico, and were known as Mexican or Chili peppers—not as Tabasco peppers. Consequently,

plaintiff's sauce did not take its name from the pepper which was its chief ingredient, but the pepper soon acquired its name from the sauce. Commencing about 1890, the peppers have been extensively raised in Louisiana and Mississippi, under the names "Tabasco peppers," "bird peppers," and "red peppers," and have been used in the manufacture of pepper-sauces substantially the same as that made by plaintiff. The seed was first catalogued by a seed store in 1886 as Chili or Tabasco pepper seed. It was not until 1888 that the pepper became known botanically as Tabasco pepper, having been at that time described in his Herbarium Notes, by Dr. E. L. Sturtevant of Geneva, N. Y., who had obtained specimens from Edmund McIlhenny, as a new garden variety of the red pepper family, to which he gave the name "Tabasco."

In 1870 Edmund McIlhenny obtained a patent for making a new and improved pepper-sauce. The process described involved abstracting the pulp from the pepper known in the market as Tabasco pepper, and mixing it with vinegar, rock salt, and alcohol, with a small amount of bisulphate of lime added to prevent fermentation. He continued to manufacture "Tabasco Pepper-Sauce" in accordance with this patent until 1875 or 1876, when the improvement described in the patent was abandoned, since which time he and his successors, the McIlhenny family, and finally the present corporation, have manufactured "Tabasco Pepper-Sauce," by mixing crushed pepper pulp with vinegar and salt only. In 190f Edmund McIlhenny's son, the immediate predecessor of the present plaintiff, registered the word "Tabasco" as a trademark in the United States Patent Office, under the Federal Trade-Mark Act of February 20, 1905. This trade-mark was subsequently canceled, pursuant to a decision of the Court of Appeals of the District of Columbia, in 1910.

Plaintiff's predecessor likewise caused the word "Tabasco" to be registered as a trade-mark under the laws of Louisiana and a number of other states, as well as in England, France, Germany, and many other foreign nations. Prior to 1897 no other maker of pepper-sauce used the word "Tabasco." Since then, about 25 manufacturers have made sauces substantially like plaintiff's, and have sold them under the name of "Tabasco Pepper-Sauce," or "Tabasco Sauce." Such of these other manufacturers, including defendant, whose use of the word "Tabasco" came to the knowledge of plaintiff and its predecessors, have been warned to the effect that they had no right to use the word in connection with the sauce, or to use similar packages, and quite a number of suits for infringement have been filed by plaintiff, most of which have been terminated by consent decrees.

[1] The facts bearing on the question of unfair competition will be stated later. The primary issue is plaintiff's right to the exclusive use of the word "Tabasco" as his trade-mark. This identical question was recently presented and passed on by the Circuit Court of Appeals for this Circuit in the case of McIlhenny v. Gaidry (1918) 253 Fed. 613, 165 C. C. A. 239, in which the facts as found by the court were substantially the same as those set forth in the stipulation

in this case. In that case Gaidry, a manufacturer of a sauce labeled "Tabasco' Pepper-Sauce," brought suit against McIlhenny Company for damages for alleged wrongful conduct in interfering with the plaintiff's business by falsely and in bad faith representing to dealers throughout the country that it had an exclusive trade-mark in the name "Tabasco," and threatening injunction and other legal proceedings against those who handled any sauce called "Tabasco" not made by the said McIlhenny Company. A jury having been waived, the lower court, Eastern District of Louisiana, found that the word "Tabasco," as applied to pepper-sauce, was generic, and indicated quality, ingredients, and place of origin of the pepper from which it was made, and rendered judgment in favor of plaintiff for damages. The court overruled a motion by counsel that this particular finding be eliminated, and the following incorporated among the court's findings of fact:

"That the word 'Tabasco,' as applied to pepper-sauce, indicates origin of manufacture; that is to say, that the sauce to which the term is applied is the sauce made by E. McIlhenny, of New Iberia, La., and his successors in title."

Whereupon McIlhenny Company sued out· writ of error, and the judgment of the lower court was reversed; the Court of Appeals sustaining the contention made by McIlhenny Company.

In a case similar to the Gaidry Case, New 'Iberia Extract Co. v. McIlhenny Sons, the New Iberia Company had recently recovered damages against McIlhenny Sons in the Supreme Court of Louisiana on a similar cause of action (New Iberia Extract Co. v. E. McIlhenny, 132 La. 150, 61 South. 131); the decision having been based largely on the judgment of the Court of Appeals for the District of Columbia, canceling the McIlhenny Company registration of "Tabasco" as its trade-mark. The trade-mark had been canceled, first, on the ground that it could not be denominated a technical trademark, because it was a geographical name; and, second, on the ground that it was fraudulently obtained, the application falsely stating it had been "in the actual and exclusive use of defendants since 1868." The court further held that, as a matter of law, the exclusive right, if any, of the defendant to the use of the name, had expired with its patent in 1887. The Court of Appeals for this Circuit in the Gaidry Case took note of these two cases, but held them not reconcilable with the later ruling of the United States Supreme Court in Baglin v. Cusenier Co., 221 U. S. 580, 31 Sup. Ct. 669, 55 L. Ed. 863, wherein it was held that the fact that the primary meaning of the word "Chartreuse" was geographical did not prevent the acquisition of the exclusive right to its use as the designation of a liqueur made by the monks of the monastery of La Grande Chartreuse. As a further inroad on the original doctrine that a geographical name could not be used as a trade-mark, the court cited the case of Hamilton Brown Shoe Co. v. Wolf Bros. & Co., 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629, in which the plaintiff's right was upheld to the use of "The American Girl" as a trade-mark for shoes. The Court of Appeals quoted from the Chartreuse Case as follows: .

"If it be assumed that the monks took their name from the region in France in which they settled in the eleventh century, it still remains true that it became peculiarly their designation. And the word 'Chartreuse,' as applied to the liqueur which for generations they made and sold, cannot be regarded in a proper sense as a geographical name. It had exclusive reference to the fact that it was the liqueur made by the Carthusian monks at their monastery. So far as it embraced the notion of place, the description was not of a district, but of the monastery of the order—the abode of the monks—and the term in its entirety pointed to production by the monks."

And from the Hamilton Brown Shoe Co. Case the court quoted:

"We do not regard the words 'The American Girl,' adopted and employed by complainant in connection with shoes of its manufacture, as being a geographical or descriptive term. It does not signify that the shoes are manufactured in America, or intended to be sold or used in America, nor does it indicate the quality or characteristics of the shoes. Indeed, it does not, in its primary signification, indicate shoes at all. It is a fanciful designation, arbitrarily selected by complainant's predecessors to designate shoes of their manufacture. We are convinced that it was subject to appropriation for that purpose, and it abundantly appears to have been appropriated and used by complainant and those under whom it claims."

In summing up the effects of these two cases, the Court of Appeals said:

"The rulings just referred to establish the proposition that the fact that a word or expression has a geographical meaning does not prevent its appropriation as a trade-mark, or as the designation of a manufacturer's or dealer's product, when it is so used as not to have a geographical or descriptive signification, nor make legally impossible the assertion in good faith of a claim of exclusive right to use such word or expression for a nongeographical and nondescriptive purpose, even though such use may result or have resulted in its acquiring a new meaning, or new meanings, separate and distinct from the one it had before."

The court then held that E. McIlhenny did not use the word "Tabasco" as a geographical or descriptive term, and, consequently, that it did not indicate the place of manufacture. Neither did it indicate the kind of pepper which was the principal ingredient, as the pepper at that time was not known as "Tabasco" pepper. All the findings of fact and conclusions of the Court of Appeals in that case are fully applicable to the present case.

The finding of the Court of Appeals for the District of Columbia that the registration by plaintiff's predecessor of the trade-mark had been fraudulently obtained was based on the fact that, in the application for registration, it was stated that applicant's use of the name "Tabasco" had been exclusive, whereas the testimony showed that several other manufacturers, during the preceding 10 years, had, to its knowledge, used the word in connection with pepper-sauce. From the stipulation in the present case, it appears that the term "exclusive use" had, up to that time, been uniformly held by the Commissioner of Patents to mean "rightfully exclusive," as distinguished from "sole and exclusive," and that the application was signed on the assurance of reputable counsel that, in the legal sense of the word, the McIlhenny use had been exclusive. The name had been used by Edmund McIlhenny and his successors since 1868, and the five or six

other manufacturers who had used it during the preceding few years had been notified of the McIlhenny claim to its exclusive use as a trade-mark. Had the application disclosed such use of the word by others, on proof that it was a wrongful use, plaintiff's predecessor would still have been entitled to the registration of the trade-mark. Under the circumstances as thus explained, I think the applicant's representation of exclusive use of the name was not made in bad faith.

As to the effect of that decree, the Court of Appeals in the Gaidry Case held that the cancellation of McIlhenny's trade-mark could not affect his rights, if he in fact had acquired at that time a common-law technical trade-mark; that a trade-mark, if it exists, exists independently of registration; and that registration does not extinguish a right which the registration did not confer, citing Edison v. Thos. A. Edison, etc., Co. (C. C.) 128 Fed. 1013; Capewell Horse Nail Co. v. Mooney, 172 Fed. 826, 97 C. C. A. 248.

[2] In support of defendant's contention that, if McIlhenny originally had a trade-mark right in the name "Tabasco," it was lost when his patent for the manufacture of pepper-sauce, taken out in 1870, expired, the leading case relied on is Singer Manufacturing Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, wherein it was held that, on the expiration of a patent, the public has the right, not only to make the patented article, but to use the identifying name it came to be known by with the acquiescence of the patentee during the term of the patent. The facts, however, in the present case, make the Singer Case inapplicable. McIlhenny continued to make his sauce by the process and with all the ingredients described in the patent only for about five or six years, since which time he and his successors have eliminated several of the ingredients, and have manufactured the sauce simply "by mixing crushed pepper pulp with vinegar and salt." During the short time McIlhenny manufactured the sauce under the patent, his business was very small and of little consequence. The marked growth of the business has been during later years, long after the abandonment of the patent. The word "Tabasco" has been in actual use since such abandonment of the patent to describe a sauce which was not made by the patented process. The Court of Appeals in the Gaidry Case said:

"If Edmund McIlhenny, prior to the expiration of the patent to him, had acquired the exclusive right to use the word 'Tabasco' with reference to a sauce not made by the patented process, that right was not extinguished by the expiration of the patent, as the patent had nothing to do with the acquisition of it. The expiration of the patent did not have the effect of conferring on the public, or the plaintiff as a part of it, any right with reference to the name of the thing which was not a subject of the patent."

Defendant Bulliard, concededly, has a perfect right, so far as plaintiff is concerned, to make sauce in accordance with the patent; but he does not pretend to be doing so, and in fact, since the adoption of the National Prohibition Amendment to the Constitution and the passage of an enforcement statute by Congress, he may not do so, as the patented process provided for a mixture of alcohol as well as vinegar with the pepper pulp. This, then, is not the case of a manu-

facturer, after the expiration of a patent, availing himself of the right to make the identical article patented, and claiming the right to identify it by the name given to it by the inventor, or acquired by it as identifying the patented article. What the defendant desires is, not the right to the use of the process, to which plaintiff makes no objection, but the right to the use of the name to designate a sauce not made in accordance with the patented process. Ordinarily the name is but an incident, a matter of but secondary importance to the substance of the thing patented; but in this case the name is of great commercial value, whereas the patented process, long since abandoned, is absolutely worthless.

Even had McIlhenny not abandoned his patent, but continued to use the patented process, it does not necessarily follow that the defendant, on the expiration of the patent, would have had the right to give to a sauce manufactured by him by the patented process the name "Tabasco." In Hopkins on Trade-Mark (2d Ed.) 80, after a statement of the general rule that the right to use the name passes to the public with the dedication resulting from the expiration of the patent, it is added:

"There seems to be an exception to this general rule, where the use of the name antedated the existence of the patent, and where it further appears that the name and not the patent gave its value to the article."

See Thomson v. Batcheller, 93 Fed. 660, 35 C. C. A. 532; President Suspender Co. v. McWilliam, 238 Fed. 159, 151 C. C. A. 235; Searchlight Gas Co. v. Prest-O-Lite Co., 215 Fed. 692, 131 C. C. A. 626.

The use of the name "Tabasco" preceded the patent by about two years, and, as similar sauces with the same ingredients have for many years been on the market, it is clear that it was the name and the intrinsic merit of the article, rather than the patent, which gave the sauce its value.

The conclusion of the court is that plaintiff's predecessor originally acquired a valid trade-mark in the word "Tabasco" as applied to pepper-sauce, and that by no action or inaction during the subsequent years has plaintiff lost the resultant right to its exclusive use. The use of the same word by defendant to designate his sauce constitutes an infringement of plaintiff's trade-mark; but, in view of the ruling of the United States Court of Appeals for the District of Columbia, and of the Supreme Court of Louisiana, in the cases heretofore noted, such bad faith cannot be ascribed to defendant in the use of the word as would warrant an award of damages against him.

[3] The plaintiff further is entitled to relief on its claim of unfair competition—in addition to violation of its trade-mark—in that the sauce manufactured by the defendant is intentionally so bottled and packaged as to be easily mistaken for that of plaintiff. Such close resemblance in the dressing of the two products, I must conclude, was by design rather than by accident. At the time defendant began his manufacture of the sauce in 1916, the label then in use on plaintiff's bottle contained the following printed matter:

"Caution: This sauce should always be mixed with your gravy, vinegar, or other condiment, before using. One or two drops are enough for a plate of soup, meat, oysters, etc., etc.

"It is superior in flavor to, and cheaper than, any similar preparation; one bottle being equal to a dozen of the ordinary kind. Established 1868.

"Use only McIlhenny's, the Original and Genuine."

The first paragraph of the caution was copied verbatim by the defendant on his labels, and for the second paragraph was substituted: "It is superior in flavor to any similar preparation." The last line, "Use only McIlhenny's the Original and Genuine," was changed to read: "Use only the genuine Evangeline, put up by Ed Bulliard, St. Martinville, La."

The directions for use then printed on the McIlhenny carton were likewise copied at length and verbatim on the Bulliard package. Defendant, in explanation, states that he did not intend to have his carton printed in imitation of complainant's, but that, in ordering said cartons, he sent with the sample a slip containing words that he desired placed on his own cartons, which the printer misunderstood, and, instead, copied thereon the printed matter on the McIlhenny carton, "sent as a guide for shape and size." He admits, however, that the printed matter on the label of the McIlhenny bottle was printed as ordered, but states that such labels and such cartons were used for only about a month. Neither plaintiff nor defendant, it appears, has used this printed matter during the past two or three years.

It appears from defendant's own statement that the McIlhenny bottle and carton were used as a guide in the manufacture of his own, and the inference must follow that his intention, then, was to make it appear to the casual observer that his sauce and that of plaintiff were one and the same, and thus secure the advantage of the extensive advertisement and wide demand for plaintiff's product, which the stipulation shows is sold in every state of the Union and many foreign countries, and is handled by a large majority of the jobbers in the United States.

Not only was the printed matter on the McIlhenny bottle and carton copied, but defendant adopted a bottle and carton of the same size and shape and strikingly similar to that of plaintiff. During the past few months the shape of the defendant's bottle has been changed from round to polygonal—so slight a change as not to be readily noticeable. Defendant's bottles, like those of plaintiff, now in use, are small and slender, with long neck, filled with a red liquid, and provided with a sprinkler or dropper. Placed side by side, there are differences easily discernible, which would not, however, be readily noted by the average purchaser, seeing the respective bottles on different occasions, the chief distinguishing mark of defendant's being a picture of a live oak tree with a blue background and the word "Evangeline" preceding "Tabasco Sauce." There is also a difference in the color of the lead foil on the mouth of the bottles; but it is a difference which would not likely be noticed, unless called to the attention of the prospective purchaser. The general appearance, the ensemble, is so similar that it is apparent that the Bulliard product may easily be mistaken for that of McIlhenny.

The policy of the law favors competition as "the life of trade," but it insists that it be fair. Unfair competition discourages the incentive to superior workmanship, and robs the honest trader of the just reward of his skill and industry. It permits the unscrupulous dealer to deceive the public, and to profit by the sale of a spurious article in the dress of a well-known and popular brand. In justice to the established business of the manufacturer, and in protection of the rights of the public, the law places the stamp of its disapproval on such business methods. No man should be permitted to put his goods on the market in another's livery; but, where the same articles are manufactured by competitors, the product of each should be so presented as to be readily recognizable as the handicraft of its maker. It should stand on its own merits, and gain its way to popular favor by its own inherent quality.

With the expansion of commerce, there has been developed in recent years a well-defined jurisprudence in cases of this character, involving what has come to be known as "unfair competition." The doctrine, now well recognized, both by the English and American courts, is thus well expressed by the Lord Chancellor in Powell v. Birmingham Vinegar Brewery, [1897] A. C. 710, 14 R. P. C. 720, 727:

"The proposition of law is one which, I think, has been accepted by the highest judicial authority, and acted upon for a great number of years. It is that of Lord Justice Turner, who says, in terms: 'No man can have any right to represent his goods as the goods of another person. In an application of this kind, it must be made out that the defendant is selling his own goods as the goods of another.' That is the only question of law which, as it appears to me, can arise in these cases. All the rest are questions of fact. The most obvious way in which a man would be infringing the rule laid down by Lord Justice Turner is, if he were to say in terms, 'These are the goods manufactured by' a rival tradesman; and it seems to be assumed that, unless he says something equivalent to that, no action will lie. It appears to me that that is an entire delusion. By the course of trade, by the existence and technology of trade, and by the mode in which things are sold, a man may utter that same proposition, but in different words and without using the name. By the identity of the form of the bottle, or the form of the label, or the nature of the thing sold in the package, he is making the statement, not in express words, but in one of those different forms in which the statement can be made by something that he knows will be so understood by the public. In each case it comes to be a question whether or not there is the statement made, and if the statement is made, there can be no doubt of the legal conclusion that he must be restrained from representing that the goods he makes are the goods of the rival tradesman. Then you get back to the proposition which I have read from Lord Justice Turner."

And in the case of MacLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, the Supreme Court thus succinctly upholds the doctrine:

"The latter has obtained celebrity in his manufacture; he is entitled to all the advantages of that celebrity, whether resulting from the greater demand for his goods, or from the higher price the public are willing to give for the article, rather than for the goods of the other manufacturer, whose reputation is not so high as a manufacturer."

See, also, New England Awl & Needle Co. v. Marlboro Awl & Needle Co., 168 Mass. 154, 46 N. E. 386, 60 Am. St. Rep. 377.

Not only did defendant adopt the name and imitate the bottles and cartons in use by plaintiff, but at the very beginning, when he started the manufacture and sale of his sauce in competition with the long-established business of plaintiff, he printed on his bottle labels a caution to use "only the genuine Evangeline," thus apparently seeking to create the impression that such Evangeline Tabasco Sauce was an old and established brand, against spurious imitations of which the public should be warned. These facts and circumstances lead to the conclusion that defendant's effort was to so imitate the bottling and packaging of plaintiff's sauce as to readily deceive the unobservant consumer, while yet preserving a sufficient distinction between the two, as would permit the building up of a demand from dealers for his own product.

Of course, there are differences in the appearance of the respective bottles, and of the respective cartons; but they are what Judge Lacombe in Scheuer v. Muller, 74 Fed. 225, 228, 20 C. C. A. 161, calls "arguable differences;" and what was said by Judge Lurton in Paris Medicine Co. v. Hill, 102 Fed. 148, 150, 42 C. C. A. 227, 230, may be said in this case, "the differences are less observable than the resemblances." And when, on the similar appearing bottles and packages, there is printed the name "Tabasco," defendant's product is well calculated to deceive the average user of the sauce, who is not expected to remember more than the general features of a mark, brand, or label (Little v. Kellam [C. C.] 100 Fed. 353, 354; Cantrell v. Butler [C. C.] 124 Fed. 290; Kostering v. Seattle Brewing Co., 116 Fed. 620, 54 C. C. A. 76; Scriven v. North, 124 Fed. 366, 378, 67 C. C. A. 348), and is not supposed to know that imitations exist (Wellman v. Ware [C. C.] 46 Fed. 289).

The fact that defendant has not only dressed his product in imitation of that of the plaintiff, but has, in addition, likewise used plaintiff's trade-mark, gives added reason why the court should require that hereafter defendant not only discontinue the use of the name "Tabasco," but that he adopt a new and distinctive bottle and carton, such as will clearly and unmistakably differentiate his sauce from the "Tabasco Pepper-Sauce" manufactured by plaintiff. Defendant may thus place himself in a position to in turn claim the protection of the law, should others thereafter attempt to infringe his trademark, or to imitate the dressing and packaging of his product.

A decree will be entered in accordance with the prayer of plaintiff's petition, enjoining the defendant from using or employing in connection with the manufacture, bottling, and packaging, advertisement, and sale of his sauce, the word "Tabasco," and from using or employing, in connection with such manufacture, advertisement, and sale of such sauce, bottles, wrappers, cartons, or packages like those shown in the exhibits herein filed, or so resembling those of plaintiff as to be calculated to induce the belief that such sauce is that manufactured by plaintiff.